# Appendix 2



GRÜNECKER
PATENT AND TRADEMARK ATTORNEYS

Grünecker PartG mbB Leopoldstr.4 80802 Munich Germany

**Via beA**

Mannheim District Court -
Patent Litigation
Chamber - A1.1
68159 Mannheim

| Ihr Zeichen / Your Ref. | Unser Zeichen / Our Ref. | Datum / Date |
|---|---|---|
| | K28096BAMHhaf | 12 February 2019 |

**We apply for assignment to the 7th Civil Court, as (1) it is already dealing with an action brought by the present petitioner from the present patent in suit EP 1177 531 under reference 7 O 62/18 and (2) the present petitioner has brought an action against another automaker from the present patent in suit EP 1 177 531 on account of systems with partly the same GPU contributing to the infringement (assignment to the 7th Civil Court requested, file number as yet unknown).**

## ACTION

in the matter of

**Broadcom Corporation,** 5300 California Avenue, Irvine, CA 92617, USA, as represented by its Board of Directors, at the same place **- Plaintiff -**

<u>Attorneys of record:</u> Attorneys of the Grünecker PartG mbB, in particular Dr. Bernd Allekotte, attorney-at-law, Leopoldstrasse 4, 80802 Munich

<u>collaborating:</u> Patent attorneys of the Grünecker PartG mbB, in particular Dr. Bernd Allekotte, patent attorney, Leopoldstrasse 4, 80802 Munich

versus

**Bayerische Motoren Werke Aktiengesellschaft,** Petuelring 130, 80788 Munich, legally represented by the Board of Management Harald Krüger (Chairman), Milagros Caiña Carreiro-Andree, Klaus Fröhlich, Pieter Nota, Nicolas Peter, Peter Schwarzenbauer, Andreas Wendt, Oliver Zipse
(hereinafter also: **BMW**)

**- Defendant (1) -**

MUNICH
Patent attorneys
European Patent Attorneys
Hans Hilgers
Thomas Schuster
Dr. Klara Goldbach
Martin Aufenanger, LLM, MM*
Dr. Heike Vogeisang-Wenke Reinhard Knauer
Dietmar Kuhl
Dr. Franz-Josef Zimmer
Bettina K. Reichelt
Dr. Anton K. Pfau
Dr. Udo Weigelt, LL.M.
Rainer Bertram
Jens C. Koch, M.S. (U of PA)
Bernd Rothaemel
Thomas W. Laubenthal, LL.M.
Dr. Andreas Kayser
Dr. Jens Hammer
Dr. Thomas Eickelkamp
Dr. Peter Miltényi[2]
Dr. Moritz Höffe, LL.M.
Gero Maatz-Jansen
Michael Heise
Christian Meisinger
Dr. Martin Ahr
Dr. Wolfgang Neubeck
Steven M. Zeman, Ph.D.
André Nickel
Felix Kahr
Dr. Alexander Stumvoll, LL.M.
Dr. Stefano Marchini[3]
Dr. Thomas Kronberger
Yilin Jin
Dr. Georg Seisenberger
Dr. Olivia Nemethova, LL.M.
Dr. Rainer Plaggenborg
Victor Lopes Agular
Dr. Sabine Koch
Wolfram Thomas
Dr. Markus Grammel
Jegannath Korukottu, Ph.D. *

Attorneys-at-Law
Attorneys-at-Law
Dr. Ulrich Blumenröder, LL.M.
Prof. Dr. Maximilian Kinkeldey, LL.M.
Dr. Karsten Brandt
Anja Franke, LL.M.
Ute Stephani
Dr. Bernd Allekotte, LL.M.[5]
Dr. Elvira Bertram, LL.M.
Babett Ertle
Christine Neuhierl
Sabine Brandstätter
Cornelia Schmitt
Petra Lübbe
Dr. Holger Gauss
Dr. Nicolás Schmitz
Marina Schlumberger
Kirsten Hammerstingl
Sebastian Clotten, LL.M.
Jennifer Rosenhäger, LL.M. Mark Peters, LL.M.
Dr. Nicola Busch
Julia Bittner, LL.M.
Sebastian Ochs
Philipp Strommer
Jan Reiher
Karin Lochner
Swetlana Frese

BERLIN
Patent attorneys
European Patent Attorneys
Dr. Patrick P. Erk, M.S. (MIT)
Dr. Svenja Sethmann
Tino Rumpold

COLOGNE
Patent attorneys
European Patent Attorneys
Dr. Martin Dropmann

PARIS
Conseil en Propriété Industrielle
European Patent Attorney
Dr. Wolfgang Neubeck

OF COUNSEL
Patent attorneys
European Patent Attorneys
Gottfried Kiltzsch

Attorneys-at-Law
Attorneys-at-Law
Dr. Helmut Eichmann
Gerhard Barth

**Grünecker Patent- und Rechtsanwälte PartG mbB**

| | | | |
|---|---|---|---|
| Leopoldstr. 4<br>80802 Munich<br>Germany | Tel. +49(0)89 21 23 50<br>Fax +49(0)89 22 02 87<br>Email info@grunecker.de | District Court: Munich<br>Partnership register:<br>PR 1397 | Deutsche Bank München<br>SWIFT / BIC code: DEUT DE MM<br>IBAN: DE47 7007 0010 0175 173400 |

[1] also: Mediator ■ also: Agente de la Propiedad Industrial (España) [3] also: Consulente in Brevetti (Italia)
[4] also: UK patent attorney ' Professor at the College of Applied Management

Reference Translation may contain inconsistencies

and the

**BMW Bank GmbH,** Heidemannstrasse 164, 80939 Munich, legally represented by the managing directors Hans-Jürgen Cohrs (Chairman), Hans-Peter Mathe, Markus Walch and Thomas Weber

**- Defendant (2) -**

on account of: patent infringement
value in dispute: EUR 1,000,000.00 (preliminary estimate)

We give notice that the lawyers listed in the heading represent the plaintiff and that the patent attorneys of Grünecker Patent- und Rechtsanwälte PartG mbB are acting as patent attorneys on the plaintiff's side.

In the name of and on behalf of the applicant, we hereby bring an

**action**

and make the following

**applications:**

The defendants are ordered

I. upon notification of an administrative fine of up to EUR 250,000.00 due for each case of infringement, alternatively up to six months imprisonment, or up to six months imprisonment, in repeat cases imprisonment up to two years, to be enforced on the defendants' respective board of directors or managing directors, to refrain from offering, placing on the market, using, and/or importing or possessing in the Federal Republic of Germany

(a) systems for processing textures for a graphic image on a display, wherein the graphic image includes an object, the object comprising a plurality of fragments, and the system includes:

- a plurality of texture processors for processing a portion of the plurality of fragments;

when

- the system includes a memory for storing a portion of a program for processing a plurality of texture portions for the plurality of fragments;

- wherein that portion of the program comprises a plurality of instructions;

97/129

- wherein the plurality of texture processors are coupled to the memory, and
- each of the plurality of texture processors is configured to process a portion of the plurality of texture portions for a fragment of the plurality of fragments according to the program,
- wherein the plurality of texture processors are capable of processing a second portion of the plurality of texture portions in parallel, and
- the plurality of texture processors implement a portion of the plurality of instructions.

(Claim 1 of EP 1 177 531/ DE 600 07 521)

in particular provided that they are installed in automobiles of the defendant (1);

and / or

offering to customers in the territory of the Federal Republic of Germany and/or delivering to such customers

(b) systems for processing textures for a graphic image on a display, wherein each system comprises a plurality of texture processors,

which are suitable for

performing a processing method in which

- the graphic image includes an object, the object contains a plurality of fragments,

- [comprise] the plurality of texture processors for processing a portion of the plurality of fragments, and

the method is characterized by the plurality of following steps:

- delivering to a plurality of texture processors a plurality of texture portions for the plurality of fragments

  and

- processing in parallel the plurality of texture portions in the plurality of texture processors on the basis of at least one program, wherein the at least one program has a plurality of instructions, the plurality of texture

98/129

processors executes a portion of the plurality of instructions, and at least one program in this way controls the processing of the plurality of texture portions by means of the plurality of texture processors

(Claim 8 of EP 1 177 531 / DE 600 07 521)

in particular provided that they are installed in automobiles of the defendant (1);

II. to inform the plaintiff in an organized - even electronic - listing about the extent to which the defendants have committed the acts referred to in Section I since 2/2/2004, stating

(a) the names and addresses of the manufacturers, suppliers and other previous owners,

(b) the names and addresses of commercial customers, as well as of the points of sale for which the products were intended,

(c) the quantity of products delivered, received and/or ordered and also the prices paid for the products concerned;

whereby the corresponding proofs of purchase (namely invoices, alternatively delivery notes) are to be presented in a copy, whereby details requiring confidentiality outside of the data subject to a reporting obligation may be blacked out;

III. in an organized - even electronic - listing to provide the plaintiff with a statement of account regarding the extent to which the defendants have committed the acts referred to in Section I since 2/2/2004, stating

a) the individual deliveries, broken down according to quantities delivered, delivery periods and prices, and product type names, as well as the names and addresses of the commercial customers,

b) the individual offers, broken down according to quantities offered, periods and prices, and product type names, as well as the names and addresses of the commercial offer recipients;

c) the advertising used, broken down by advertising media, their circulation, distribution period and circulation area,

d) the production costs broken down according to individual cost factors, and the profits achieved;

whereby the defendants are reserved the right to convey the names and addresses of the non-commercial customers and the recipients of the offers not to the plaintiff himself but instead to a sworn auditor, appointed by the plaintiff and obliged to maintain confidentiality vis-à-vis the plaintiff, residing in the Federal Republic of Germany, provided that the defendants bear the auditor's costs and authorize and oblige the latter to inform the plaintiff on request whether a particular customer or offer recipient is included on the list;

IV. to hand over, at the expense of the defendants, the products referred to in Section I in the direct or indirect possession or property of the defendants, to a bailiff appointed by the claimant for the purpose of destruction of the products;

V. to recall from the distribution channels referred to in Section I above those products which have been since 4/30/2006 in the possession of third parties, by pointing out to those third parties who have been granted possession of the products by the defendants or with their consent that the court in conformity with the present judgment has detected an infringement of the patent in suit, and earnestly requests them to return the goods to the defendants, and in the event of the goods being returned the third parties are promised a refund of any purchase price already paid and the costs of returning the goods;

We will also request:

VI. a declaration that the defendants are obliged to compensate the plaintiff for all losses suffered by the plaintiff as a result of the acts referred to in Section I, committed since 2/2/2004 and still to be committed;

VII. an order for the defendant to pay the costs;

VIII. determination of partial sureties for each granted claim, namely as follows:

for the claim for a restraining injunction (Section I), the surety shall be fixed at EUR 800,000.00.

for the claims for recall/removal and destruction (Sections IV and V) a further partial surety of EUR 50,000.00 shall be provided.

for the claims to information/ rendering of account (Sections II and III) the surety shall be fixed at EUR 50,000.00.

for the costs or damages (Sections VI and VII), the surety shall be fixed at 120% of each amount that is to be enforced.

Statement of grounds:

I.

**Parties and situation regarding industrial property rights**

1. The plaintiff is a world leader in semiconductor technology and holds patents in this field.

2. The defendant (1) is a German automotive group known to the court.

3. The defendant (2) rents (leases) cars of the defendant (1).

II.

**The patent in suit**

**1. Formalities**

The plaintiff is the holder of European patent EP 1 177 531 B1 granted on the application of 5/2/2000, which inter alia was also issued with effect for the Federal Republic of Germany and is filed at the German Patent Office under the number DE 600 07 521 (hereinafter: the **patent in suit).**

The patent in suit claims the priority of US patent application no. 09/306,877 of 5/7/1999 and is in force. The application was published on 2/16/2002, the reference to the grant of patent on 1/2/2004.

We submit a copy of the patent in suit as

- **- Attachment K 1 -**

as well as the German translation - published as DE 600 07 521 T2 - as

- **- Attachment K 2 -**

and an extract from the register with status as

**- Attachment K 3 -**

References to reference locations in the following statements refer to DE 600 07 521 T2, unless specified otherwise.

103/129

## 2.    Technical background

The patent in suit concerns a system and a method for processing textures of a graphic image (patent in suit, paragraph [0001]).

Conventional computer graphics systems represent graphic images of objects on a display. The display comprises a plurality of display elements, so-called pixels, which are usually arranged in a grid. A pixel is the smallest unit that can be presented on a display. In order to display objects, a conventional graphics system divides each object into a plurality of polygons (often triangles) which are then rendered in a particular order (patent in suit, paragraph [0003]).

Subdivision into polygons is shown by the following figure:



**Figure 3: Triangle mesh on a three-dimensional image**

Each polygon, laid over a grid of pixels, covers or intersects a number of pixels. The covered or cut pixels are assigned to the polygon and referred to as a 'fragment'. Each polygon typically includes multiple fragments. Each fragment contains data about the polygon for the pixel that the fragment covers or cuts. The data typically relate to color, blending mode and texture.

As a faster orientational guide for the court, we provide the following illustration:

104/129

Polygon
Pixel grid
vom Polygon geschnittener Pixel
Pixel cut by polygon
vom Polygon überdeckter Pixel
Pixel covered by polygon
"Fragment" (mit Daten wie Farbe und Textur)
'Fragment' (with data such as color and texture)

To render a fragment, the graphics processing system must process color and texture for the fragment (patent in suit, paragraph [0004]). This is done, for example, by blending the color and the texture to obtain a final color value for the fragment at the corresponding pixel (patent in suit, paragraph [0005]).

For the English term 'texture' in the original of the patent in suit, the T2 document uses the [German] term 'Struktur', which in this context is synonymous with 'texture'. Both terms mean the same thing: structures/textures denote a kind of coating of a 3D model of an object, which gives the object a kind of 'surface structure' (hence the German translation). Deviating from the T2 document, the term 'Textur' is used here [in the German original of the present document] - more in line with the wording in the English original.

A texture can also be thought of as a different color, typically derived from a texture image or texture map (patent in suit, paragraph [0005]). For illustrative purposes, we show below an example image for a 3D model with a texture applied to it together with the corresponding texture map, which comes from the entry 'Textur (Computergrafik) [Texture (computer graphics)]' from the Wikipedia online encyclopedia (https://de.wikipedia.org/wiki/Textur_(Computergrafik)):

105/129

Reference Translation - may contain inconsistencies

The image on the left shows the textured or structured 3D model, while the image on the right shows the corresponding texture map.

In the context of the patent in suit, it is fundamentally a matter of assigning corresponding texture values to the fragments of an object that is to be imaged. An object is ultimately displayed on a display device that has a plurality of pixels. For this reason it is necessary for the purpose of the representation to process (compute) the data of a fragment so as to obtain a color value for each pixel of the display device.

Texture processing units known from the prior art are explained in the patent in suit in connection with Figs. 2 to 5. Here the individual fragments of an object are processed serially. Even a so-called multiple texture mapping is possible either by several conventional texture blending units being connected in series (Figure 3) or the result of the texture blending being fed back to the texture blending unit until the desired result has been achieved (Figure 4). Conventional texture blending units are in each case in connection with a texture map/image and implement a predetermined blending operation (see paragraph [0031] of the patent in suit).

What the patent in suit criticizes in such and similar conventional graphics systems is that they are either too limited in their function and too inflexible, or actually require a complex structure (see paragraph [0008] of the patent in suit). This is due to the fact that both multiple fragments as well as multiple textures can only be processed consecutively and the texture blending units must be specially designed for specific blending operations.

## 3. Task and solution

Against this background, the invention has the **task** of providing a system and a method that makes possible an

> *"adaptable mechanism for providing texture processing without adversely affecting the performance of the system"* (paragraph [0009] of the patent in suit),

Reference Translation - may contain inconsistencies

The patent in suit solves this task inter alia by the system according to Claim 1.

A plurality of texture processors are accordingly provided which can process texture portions of the fragments in parallel, namely by implementing the corresponding instructions of a program stored in a memory. Due to the fact that a program stored in a memory is accessed in order to process the textures of the fragments, different blending operations can be realized in a simple manner. Due to processing taking place on parallel texture processors, it can also be ensured that performance is not adversely affected (see paragraphs [0048] and [063] of the patent in suit).

In the form of a **feature analysis**, the Main Claim 1 of the patent in suit can be presented as follows:

1. System for processing textures for a graphic image on a display, wherein the graphic image comprises an object and the object comprises a plurality of fragments, and the system includes:

1.1 a plurality of texture processors for processing a portion of the plurality of fragments;

- Preamble -

1.2 a memory for storing a portion of a program for processing a plurality of texture portions for the plurality of fragments;

1.3 wherein that portion of the program comprises a plurality of instructions;

1.4 wherein the plurality of texture processors are coupled to the memory, and

1.5 each of the plurality of texture processors is configured to process a portion of the plurality of texture portions for a fragment of the plurality of fragments according to the program,

1.6 wherein the plurality of texture processors are capable of processing a second portion of the plurality of texture portions in parallel, and

1.7 the plurality of texture processors execute a portion of the plurality of instructions.

- Characterizing part -

108/129
107/129

A copy of this feature analysis is presented by ourselves as

**- Attachment K 4 -**

**4. Explanation of the subject-matter of Claim 1**

The person skilled in the art is a computer scientist with a university or college degree who is familiar with computer graphics systems and with the techniques required to generate graphic images on screens, and who has several years of experience in this technical field.

The invention can be explained with reference to Fig. 7 of the patent in suit, which we show below:

Figur 7

The figure shows a system for processing textures for a graphic image on a display of a plurality of texture processors ('structure processors') 154-1, 154-2 to 154-k **(Feature 1.1),** which are connected to a memory 156 via a distributor 152. Such a system is typically realized as part of a graphics processor (see image generation unit 120 in Figure 6 of the patent in suit). The object to be displayed is formed, as mentioned above, from a plurality of fragments **(Feature 1).**

109/129

Reference Translation - may contain inconsistencies

The memory 156 to be seen in Figure 7 is provided to store at least a portion of a program. The program serves for processing a plurality of texture portions for the plurality of fragments **(Feature 1.2).**

By a 'texture portion', the patent in suit understands a part of a texture associated with a fragment. In the English, the patent in suit uses the term 'texture portion'. Such a texture portion can also be referred to as an 'elemental pattern' or 'texel' (see paragraph [0005] of the patent in suit).

The at least one portion of the program comprises multiple instructions, for example for reading in data, for processing the data and for outputting the processed data **(Feature 1.3).**

In order for the plurality of the texture processors to execute at least a portion of the plurality of instructions, they are coupled to the memory **(Feature 1.4).**

According to the claims is furthermore provided that at least a portion of the texture sections for a given fragment can be processed by each of the texture processors **(Feature 1.5).** In addition, the texture processors should be able to process in parallel a second portion of the plurality of texture portions **(Feature 1.6).** By recourse to parts of the stored program, the plurality of texture processors executes a portion of the plurality of instructions.

As in section [0032] with regard to the exemplary embodiment according to Figure 7 of the patent in suit, a texture processor may preferably perform all of the texture processing for a particular fragment. Alternatively, however, only some of the texture processing for a fragment may be performed by a texture processor. The remaining portion of the texture processing for the one fragment may then be provided by one of the other texture processors:

> *"Der Verteiler 152 verteilt Fragmente auf die Strukturprozessoren 154-1 bis 154-k zur Strukturverarbeitung. Die Strukturprozessoren 154-1 bis 154-k können daher k Fragmente parallel verarbeiten. In einem bevorzugten Ausführungsbeispiel führt ein Strukturprozessor 154-1 bis 154-k die gesamte Strukturverarbeitung für ein bestimmtes Fragment durch. In einem alternativen Ausführungsbeispiel jedoch kann ein Strukturprozessor 154-1 bis 154-k nur einen Teil der Strukturverarbeitung für ein Fragment durchführen. Der verbleibende Teil der Strukturverarbeitung kann von einem anderen Strukturprozessor 154-1 bis 154-k bereitgestellt werden."*

(our emphasis and omissions)

Translated:

> *"The distributor 152 distributes fragments to the texture processors 154-1 through 154-k for texture processing. The texture processors 154-1 through 154-k can, therefore, process k fragments in parallel. In a preferred embodiment, a texture processor 154-1 through 154-k performs all of the texture processing for a particular fragment. However, in an alternate embodiment, a texture processor 154-1 through 154-k may perform only a portion of the texture processing for a fragment. The remainder of the texture processing may be provided bv another one of the texture processors 154-1 through*

110/129

*154-k".*

(our emphasis)

With the aid of the texture processors, it is thus possible to process not only a plurality of fragments in each case in their entirety in parallel but also multiple texture portions of a given fragment in parallel.

In summary, the protected system thus allows multiple texture portions to be processed in parallel by executing in parallel sets of instructions from a memory. The program gives the processors the appropriate instructions for process the fragments, and the processors execute these instructions accordingly.

**5. Method Claim 8**

The patent in suit solves the aforementioned task also by the method according to Claim 8. In the form of a feature analysis Claim 8 is as follows:

8. A method for texture processing for a graphic image on a display, wherein the graphic image includes an object and the object includes a plurality of fragments;

8.1 The system includes a plurality of texture processors for processing a portion of the plurality of fragments, and the method is characterized by the plurality of steps:

8.2 (a) providing a plurality of texture processors with a plurality of texture portions for the plurality of fragments;

8.3 (b) parallel processing of the plurality of texture portions in the plurality of texture processors on the basis of at least one program;

8.3.1 the at least one program comprises a plurality of instructions;

8.3.2 the plurality of texture processors execute a portion of the plurality of instructions;

8.3.3 at least one program controls in this way the processing of the plurality of texture portions by means of the plurality of the texture processors.

A copy of this feature analysis is presented by ourselves as

**- Attachment K 5 -**

The method claim is self-explanatory against the background of the explanations to the system claim. In comparison to the system claim, the following should be highlighted:

- In Feature 8.3(b), the reference to texture portions "for a fragment", as found in Feature 1.5, is missing.

- The method claim also leaves open (in Features 8.3.1 and 8.3.3) whether and, if so, where the program is stored. Provisions, such as in Feature 1.2 (which envisages a 'memory' to hold the program) and Feature 1.4 (according to which the memory is coupled to the texture processor) are missing.

112/129

## III.

## Nature of the attacked embodiments and patent infringement

### 1. Attacked embodiments

The defendants are infringing Claims 1 and 8 of the patent in suit. Merely by way of example and without limitation, we refer to the infotainment systems with navigation system and display used in the X1, the 1 Series and the 5 Series. The infotainment systems are offered and placed on the market in the Federal Republic of Germany without the consent of the plaintiff.

The infotainment systems are chosen only by way of example. The invention may also be in use in other systems of the defendants.

By way of example, we will take two embodiments that use the following chips:

- **Embodiment I: Texas Instruments DRA746 with PowerVR SGX544 - dual core**
- **Embodiment II: Texas Instruments OMAP5432 with PowerVR SGX544 - dual core**

The core of both embodiments is the **'PowerVR SGX544 - dual core'** graphics processor ('graphical processing unit', for short 'GPU') installed on the respective Texas Instruments chip, which is why we are **jointly** deal with the infringement for both embodiments, namely using the example of **Embodiment I**, installed in the BMW X1:

By way of example, we show a screenshot of the navigation display in the BMW X1:

*Reference Translation - may contain inconsistencies*



16

MÜNCHEN, FRAUENPLATZ MUNICH
Eisenmannstrasse
nger Strasse
Hofstatt
Färbergraben
Ettstrasse
Löwengrub
Rosental
Mazaristrasse
Löwengrube
Kaufingerstrasse
Petersplatz
Schrammerst
Dienerstrasse
Dienerstrasse
Residenzs
lünchen
50 m
Alter Hof

The following head unit installed in the BMW X1 with production number attached thereto and further technical information - in the present case not of interest - has been examined by the plaintiff, and the following was found:

BMW Group
NTC
PTA
ANATEL
MAGNETI MARELLI

*Reference Translation - may contain inconsistencies*

Inside the head unit there is among other things a board with a 'JACINTO' processor of the series 'DRA746' of the manufacturer Texas Instruments:

18

The chip is shown below enlarged again:

116/129

*Reference Translation - may contain inconsistencies*



Another Texas Instruments chip, an 'OMAP5432' **(Embodiment II)**, is installed and used in the BMW 5 Series. This navigation system according to Embodiment II is offered by the defendant (1) with reference to

"3D representation, [...] 3D landmarks with buildings in real representation"

The 'PowerVR SGX544 - dual core' GPU always forms part of the two aforementioned Texas Instruments chips. The GPU has two cores, which is why it bears the additional designation of 'Dual Core'. The PowerVR GPU is from Imagination Technologies.

We show below the structure of a Texas Instruments chip of the 'DRA74x' series (Embodiment I) (note: the 'x' is a placeholder, the 'DRA746' thus forms part of this series) on which the aforementioned GPU is installed. The GPU of particular interest is highlighted in color.

117/129



Figure 1-2. DRA75x, DRA74x Block Diagram

This GPU is also used in the 'OMAP5432' (Embodiment II).

The more detailed structure of the GPU is shown below in the illustration which derives from the manufacturer Imagination Technologies. Noteworthy is the (green-bordered) 'Universal Scalable Shader Engine 2' which contains a plurality of (red-bordered) 'Multi-Threaded Execution Units':

Reference Translation - may contain inconsistencies



**Unified Scalable Shader Engine 2 (USSE2) mit Multi-Threaded Execution Units**

More information on how the PowerVR GPU works may be found in the excerpts presented from the Texas Instruments 'Technical Reference Manual' for the 'DRA75x' and 'DRA74x' as

- **- Attachment K 6 -**

and also the 'Architecture Guide for Developers' for the 'PowerVR Series' from the manufacturer Imagination Technologies, submitted as

- **- Attachment K 7 -**

as well as an overview leaflet for the ‘PowerVR SGX Series 5XP’

- **- Attachment K 8 -**

## 2. Patent infringement

### 2.1 Claim 1

Reference Translation – may contain inconsistencies

**(i) Feature 1:**

The following emerges in detail from the plaintiff's investigations:

The GPU is undoubtedly a system for processing textures for a graphic image on a display (the car's display). The defendant (1) himself speaks of 'real representation', which presupposes the reproduction of textures. The graphic image comprises an object, and the object comprises a plurality of fragments.

**Feature 1** is therefore realized.

**(ii) Feature 1.1:**

The USSE2 shown above is described in the 'Technical Reference Manual' (see p. 371 under Section 1.3.9 of **Attachment K 6**) as

> *"Second-generation universal scalable shader engines (USSE2), multithreaded engines incorporating pixel and vertex shader functionality" "*

and also on p. 3710 under Section 12.1.1 of **Attachment K 6:**

> *"Universal Scalable Shader Engine (USSE™):*
> - *Multithreaded engine incorporating vertex and pixel shader functionality*
> - *Automatic load balancing of vertex and pixel processing tasks"*

The USSE2 with the 'multithreaded engines' contained therein are patented texture processors. The 'pixel shader functionality' assigned to the 'multithreaded engines' attests to the texture processing performed in the USSE2 for some of the fragments. This follows, for example, from the Wikipedia entry for 'Shader', presented as

**- Attachment K 9 -**

120/129

Here the 'shaders' or 'pixel shaders' are assigned the texture processing function for each fragment when it says:

- 'Shaders replace a section of the graphics hardware typically called the Fixed Function Pipeline (FFP), so-called because it performs lighting and texture mapping in a hard-coded manner. Shaders provide a programmable alternative to this hard-coded approach."

(our emphasis)

- '2D shaders act on digital images, also called textures in computer graphics work. They modify attributes of pixels. 2D shaders may take part in rendering 3D geometry. Currently the only 2D shader types are pixel shaders.'

(our emphasis)

- 'Pixel shaders, also known as fragment shaders, compute color and other attributes of each 'fragment'

(our emphasis)

In accordance with this it is stated in the overview leaflet **Attachment K 8** (first page, righthand column, center):

"Shader-based architecture enables near photo realistic image quality'".

In this regard the 'Architectural Guide for Developers' **(Attachment K 7)** explains in more detail in Section 2.5:

"Once the iteration has been performed, the TSP can submit groups of visible fragments to the USSE via the CGS to be textured and shaded ...."

(our emphasis)

This establishes that the individual fragments are textured in the USSE.

The GPU is also assigned the responsibility for image processing, see overview leaflet **Attachment K 8** (first page, righthand column, bottom):

121/129

"Applications:...« In-car navigation and Information"

Feature 1.1 is **thus realized.**

**(iii)   Feature 1.2:**

The GPU supports the standards 'OpenGL ES 2.0' (cf. 'Architectural Guide for Developers", **Attachment K 7**, p. 10, at the end of Section 2.5) as well as 'OpenCL 1.1' (cf. Technical Reference Manual, **Attachment K 6**, p. 371 in Section 1.3.9). According to **Attachment K 8** (second page, lefthand column, second paragraph) the USSE2 units are programmable.

Since the USSE2s are 'programmable', this also implies a memory for storing a portion of a program for processing a plurality of fragments.

**Feature 1.2** is thus also realized.

**(iv)   Feature 1.3:**

Each program necessarily contains a plurality of instructions, which also emerges directly from Attachment K 8 (second page, lefthand column, second paragraph). **Feature 1.3** is thus realized.

**(v)   Feature 1.4:**

A coupling of the USSE2 with the memory is also an implicit requirement. **Feature 1.4** is thus realized.

**(vi)   Features 1.5 and 1.6:**

We show below an extract from the 'Architectural Guide for Developers', **Attachment K 7**, p. 11.

*Reference Translation – may contain inconsistencies*



Figure 12. SGX-MP example tile distribution

According to this, the object to be displayed (in the present case a sailing ship on the water in front of an island) is divided into a number of tiles (each containing fragments), which are then processed individually and in parallel with other tiles (containing fragments). This is confirmed by the note:

> "During the rasterization, texturing and shading process, each additional graphics core allows another tile to be processed in parallel, as shown in Figure 12."

(from **Attachment K 7**, p. 11, Section 2.7, 4th para.)

Here, then, several tiles (with fragments) are allocated for parallel texture processing. Here, texture and shading are also explicitly mentioned (op. cit.):

> 'A tile task submitted to a graphics core includes HSR, <u>texturing</u> and <u>shading</u>."

(our emphasis)

123/129

This type of processing is described as being particularly efficient (op. cit.). Each tile contains different fragments that are blended with different texture portions.

This proves that each USSE2 is assigned a portion of the texture portions for a fragment for processing, whereby the processing is in parallel. **Features 1.5 and 1.6** are thus realized.

**(vii) Feature 1.7:**

As shown above, a patent-infringing GPU processes program commands and instructions in several 'threads' and operates in accordance with a program. The program defines the functions or the program commands to be executed of each thread. As also shown above, the tiles and the fragments contained therein are processed in parallel. Consequently, the texture processors execute a portion of the (plurality of) instructions, thereby realizing **Feature 1.7**.

The infringing embodiments thus make use of all the features of Claim 1.

Only as a precautionary measure, in this regard we offer as

**Evidence:** Expert opinion.

**2.2 Claim 8**

Claim 8 is also realized:

**(i) Feature 8:**

As shown above, the infotainment system used in automobiles of the defendant (1) allows texture processing for a graphic image on a display, wherein the graphic image contains an object and the object contains a plurality of fragments. We refer in full to our comments under Section III.2.1(i). Feature 8 is **thus realized.**

- **Feature 8.1:**

As stated above, in Section III.2.1(ii), the system also includes a plurality of texture processors for processing a portion of the plurality of fragments, so that **Feature 8.1** is realized.

- **Feature 8.2:**

In Section III.2.1(iii) above it was also shown that each texture processor (in the form of the USSEs, these containing 'multi-threaded execution units') is set up for processing a

124/129

portion of the plurality of texture sections for a fragment of the plurality of fragments in accordance with the program. In fact, the plurality of texture portions are provided for the plurality of fragments of the plurality of texture processors. Feature 8.2 is **thus realized.**

- **Feature 8.3:**

There is also a parallel processing of the plurality of texture portions in the plurality of texture processors, as described above under Section III.2.1(vii). Feature 8.2 is **thus realized.**

- **Feature 8.3.1:**

The program also has a plurality of instructions, as already outlined in Section III.2.1(iv) above. Feature 8.3.1 **is thus realized.**

- **Feature 8.3.2:**

As also shown above, in Section III.2.1(viii), the plurality of texture processors execute a portion of the plurality of instructions. Feature 8.3.2 **is thus realized.**

- **Feature 8.3.3:**

Also (as shown above, in Section III.2.1 (vi)) there is a program (stored in a memory) that controls the processing of the plurality of texture portions by means of the plurality of texture processors. **Feature 8.3.3** is thus realized.

*Reference Translation - may contain inconsistencies*

As a particularly precautionary measure, for everything presented above under Section III.2.2:

**Evidence:** Expert opinion.

Reference Translation - may contain inconsistencies

## IV.

## Legal arguments

The claim for injunctive relief finds its basis in §139 Para. 1 in conjunction with §9 Section 2 No. 1 PatG [Patent Act]. The defendants are distributing the systems described by way of example, which fall under Claim 1 of the patent in suit, thus directly infringing it. There is a risk of recurrence. The defendants are offering and distributing in Germany the products here represented. The defendant (2) is distributing them by way of leasing.

In addition, the defendants also realize Claim 8, by offering and providing means (namely, the distributed systems installed in the cars of defendant (1)) that are capable of executing a method according to Claim 8. It is to be assumed that the customers of the defendants also use these systems accordingly and take them into use in a patent-infringing manner. The suitability for patent-compliant use is known to the defendants due to their expertise in the market and responsibility for built-in components in the car. For an off-patent use, there are no indications. Incidentally, the intended use is also obvious, since it is expected that components in cars - in the present case the systems described above - are actually used by the purchasers of the cars. Claim 8 is thus infringed under the aspect of indirect patent infringement (§10 PatG [Patent Act]).

The defendants are under obligation to inform themselves about the relevant industrial property rights of third parties and to observe them. The defendants are thus at all events acting negligently.

In addition, the defendants are obliged to pay compensation, §139 Para. 2 PatG [Patent Act]. Since there is sufficient likelihood that the plaintiff has suffered damage as a result of the acts of infringement of the defendants, the plaintiff has a legitimate interest in determining the liability for damages in respect of the patent in suit. The plaintiff is not in a position to quantify the amounts, for which is why he is also entitled to claims for information and damages (as a result of §140b Para. 1 PatG [Patent Act] or §242 BGB [Civil Code]).

In addition, the plaintiff has the right to demand the recall and removal of infringement products from the distribution channels, §140a Para. 3 PatG [Patent Act].

The asserted claim for destruction follows from §140a Para. 1 PatG [Patent Act].

Finally, according to §140b Para.1 PatG [Patent Act], the defendants have an obligation to provide the claimant with information about the origin and distribution channels of the patent-infringing products.

The jurisdiction of the Mannheim District Court is based on the aspect of nationwide infringement (§32 ZPO [Code of Civil Procedure]) and the fact that this is a patent dispute (§143 PatG [Patent Act]).

127/129

Dr. Bernd Allekotte
- Attorney-at-Law -

<u>Attachments</u>

K 1 EP 1 177 531 B1
K 2 DE 600 07 521
K 3 Registry extract for DE 600 07 521
K 4 Feature analysis Claim 1
K 5 Feature analysis Claim 8
K 6 Texas Instruments Technical Reference Manual for DRA75x, DRA74x (extracts)
K 7 Architectural Guide for Developers by Imagination Technologies
K 8 Overview leaflet for PowerVR SGX, 5XP Series
K 9 Wikipedia extract for ‘Shader’

128/129

Reference Translation - may contain inconsistencies