# Appendix 6

EIP Europe LLP
Graf-Adolf-Strasse 14
D-40212 Dusseldorf

T +49 (0)211 9595 8500
F +49 (0)211 9595 8544

dusseldorf@eip.com
eip.com

Certified copy

**⊕ᴵᴾ | LEGAL**

<u>**IN ADVANCE BY FAX: +49 40 428 43-4318**</u>
<u>**(Without attachments)**</u>

Hamburg Regional Court
Civil Chamber 27
Sievekingplatz 1
20355 Hamburg

**Attorneys-at-Law**
Dr. Christof Hoehne, LL.M. [1]
Florian Schmidt-Bogatzky, LL.M.[2]
Michael Munsch[1]
Isabelle Schaller Elisa
Beckamp, LL.M.
Dimitri Kosenko

Florian Schmidt-Bogatzky
fschmidtbogatzky@eip.com
**+49 211 9595 85 09**

GENERAL RECEIVING OFFICE
Received on:

August 6, 2019 | 7 – 8 a.m.

AT THE HAMBURG COUNTY
COURT

August 2, 2019

**ACTION**

brought by                    **Avago Technologies International Sales Pte. Limited,** 1
Yishun Avenue 7, Singapore 768923, represented by the
Executive Board,

- **Claimant** -

Counsel:                      EIP Europe LLP, Graf-Adolf-Strasse 14, 40212 Dusseldorf

Collaborating:                Dilg, Haeusler, Schindelmann Patentanwaltsgesellschaft mbH,
Leonrodstr. 58, D-80636 Munich

versus                        **BMW AG,** Petuelring 130, 80788 Munich, represented by the
Board: Harald Krueger (Chairman), Milagros Caiña Carreiro-
Andree, Klaus Froehlich, Pieter Nota, Nicolas Peter, Peter
Schwarzenbauer, Andreas Wendt, Oliver Zipse

- **Respondent 1** -

*Reference Translation – may contain inconsistencies*

EIP Europe LLP                                                                                      Page 2
Complaint of August 2, 2019

Bath ···      Cardiff ···     Denver*       Düsseldorf     Leeds        London ···
(0)1225 337 843   (0)29 2025 0599   720-845 4065   (0)211 9955 8600   (0)113 243 7491   7200 7440 9510

and

**BMW Bank GmbH,** Lilienthalallee 26, 80939 Munich,
represented by the Managing Director, Hans-Juergen Cohrs
(Chairman), Hans-Peter Mathe, Markus Walch and Thomas
Weber

- **Respondent 2** -

due to:          **Patent infringement**

Value in dispute (provisional estimate):          **EUR 1,000,000.00**

On behalf of and with the authority of the Claimant, we are bringing an action and will move
that the following be recognized:

    I.    that the Respondents be required,

        1.    on report of a for each case of infringement by the Court to be set
fine of up to 250,000.- euros, or alternately imprisonment of up to six
months, or of imprisonment of up to six months, in the case of a
repeat offense, of up to a total of two years, the imprisonment to be
enforced on the members of their Board of Directors or Chief
Executive Officers,

        to refrain from,

        producing, supplying, marketing or possessing systems for the
processing of signals received via a communication medium in
Germany and/or importing the same for these purposes,

EIP Europe LLP                                                              Page 3
Complaint of August 2, 2019

whereby the system comprises:

- a chip comprising a first radio or first receiver used for processing a signal for a first wireless protocol; and

- said chip comprises a shared LNA that enables receiving said signal for said first wireless protocol and a signal for a second wireless protocol,

whereby

a transconductance amplifier within said chip is utilized to couple an output of said shared LNA to said first radio or first receiver;

and whereby

said shared LNA is integrated within a second radio or second receiver in said chip used for processing said signal for said second wireless protocol.

(EP 1 931 052 B1, Claim 11);

in particular if

said second radio or second receiver is a WLAN radio or WLAN receiver.

(EP 1 931 052 B1, Claim 12);

and/or if

said transconductance amplifier is integrated within said second radio or second receiver.

(EP 1 931 052 B1,
Claim 13);

and/or

said first radio or first receiver is a Bluetooth radio or Bluetooth receiver.

(EP 1 931 052 B1,
Claim 14);

2. to furnish the Claimant with information, by submitting a consistent, chronologically arranged list, as to what extent the Respondents have committed the acts described under I.1 since 6/2/2012, stating

(a)   the names and addresses of the manufacturers, suppliers, and other previous owners;

(b)   the names and addresses of the commercial customers, as well as the sales outlets for which the products were intended,

(c)   the quantity of products manufactured, delivered, received or ordered, as well as the prices that were paid for the products in question,

whereby

the corresponding purchase receipts (namely invoices or delivery notes) must be submitted as a copy in order to verify the information, wherein details subject to confidentiality outside of the data subject to the information requirement may be blacked out;

3. to furnish the Claimant with information, by submitting a consistent, chronologically arranged list, as to what extent the Respondents have committed the acts described under I.1. since 6/2/2012, stating

    (a)   the production quantities and times,

    (b)   the individual deliveries, broken down according to delivery quantities, times, prices, and type designations, as well as the names and addresses of the industrial customers,

    (c)   the individual proposals, broken down according to offer quantities, times, prices, and type designations, as well as the names and addresses of the industrial offerees,

    (d)   advertising activities, broken down according to advertising media, their circulation figures, distribution times, and distribution areas,

    (e)   the production costs and profit achieved broken down according to the individual cost factors,

whereby

- instead of providing the names and addresses of the commercial recipients and non-commercial recipients to the Claimant, the Respondents reserve the right to provide them to a certified accountant specified by the Claimant and based in the Federal Republic of Germany who is subject to the duty of confidentiality with respect to the Claimant, insofar as the Respondent bears his costs and, in answer to a specific request, authorize and obligate him to inform the Claimant whether a specific commercial recipient / offeree is included in the list;

- to surrender the products indicated in section I.1.b) in their immediate or indirect possession or in their ownership, to an officer of the Court to be nominated by the Claimant or the purposes of destruction at their, the Respondents', expense, whereby the right to destroy the products referred to themselves and to verify the destruction to the Claimant by written declaration remains reserved to them;

4. to recall the products indicated in section I.1.b) marketed since June 2, 2012 from commercial purchasers, indicating that the patent-infringing status of the products referred to has been established by the present judgment, and with the binding commitment to reimburse any charges and packaging and transportation costs required and to assume customs and storage costs associated with the return and to accept the products again;

5. to remove the products indicated in section I.1.b) marketed since June 2, 2012 permanently from the distribution channels by receiving the same and/or by ensuring that the respective owners destroy the products.

II.    It is determined that the Respondents are obligated to compensate the Claimant for all damages, which

- have arisen or which are to arise for Broadcom Corporation, Irvine, CA, USA due to the actions committed as indicated in section I.1. during the period from June 2, 2012 to November 28, 2016;

- have arisen and which are still to arise for the predecessor in title (to wit Avago Technologies General IP (Singapore) Pte. Ltd., Singapore) of the Claimant due to the actions committed as indicated in section I.1. between November 29, 2016 and September 5, 2018.

- have arisen and which are still to arise for the Claimant due to the actions committed as indicated in section I.1. Since September 6, 2018.

III.    The Respondents are to bear the costs of the litigation.

IV.    The judgment is provisionally enforceable against a security, which can also be rendered in the form of a bank or savings bank letter of credit. Each individual operative part may be enforced against a security in the amount of a partial amount of the total security, to be set in each case by the Court.

Should written preliminary proceedings be ordered, we request at this point that a default decree pursuant to Art. 33, s. 3 of the (German) Code of Civil Procedure be issued should the Respondents not indicate their defense preparedness in a timely fashion.

EIP Europe LLP                                                          Page 8
Complaint of August 2, 2019

## Table of contents

A.      Parties ......................................................................................9

B.      Patent in suit EP 1 931 052 B1 ..............................................10

I.      Formal data ...........................................................................10

II.     Technical background and referenced prior art ..................11

III.    Technical problem .................................................................12

IV      Solution .................................................................................12

C.      Patent infringement .............................................................19

I.      The form of infringement makes use of Claims 11, 12, 13 and 14 of the
        patent in suit ........................................................................33

D.      Legal consequences ............................................................35

## Grounds

### A.  Parties

1.  The Claimant is a worldwide leading company in the field of semiconductor technology and holds patents in this field. It is part of Broadcom. The group of companies to which the Claimant belongs has steadily increased in size over the last few years. Based on turnover, it is the third largest semi-conductor company in the world (not including contract manufacturers and memory chip companies) with more than 15,000 employees around the world. The Claimant invests more than EUR 3 billion every year in research and development and has a substantial patent portfolio. Recently, the Claimant has observed that cars in particular increasingly have components that infringe a number of its patents.

2.  Respondent 1) is a renowned German automotive group.

3.  Respondent 2) is a group company of Respondent 1) and rents (leases) cars of Respondent 1).

4.  As an example, in their cars from the BMW 5 series, which are manufactured in Germany and sold in Germany and internationally; the Respondents use the built-in vehicle infotainment unit (head unit) with the designation 6512-9877375 (DE). The unit makes use of the technical teaching of the patent in suit. The claims arising from this are asserted in the present action. It should be noted that the Respondents also use the infringing embodiment in other vehicles, for example in the head unit of the BMW i3 and i8.

### B. Patent in suit EP 1 931 052 B1

### I. Formal data

5. The Claimant is the owner, with sole authorization to dispose, of European patent EP 1 931 052 81 (patent in suit), the patent specification of which we enclose as a copy, in triplicate for the Board, as

**Attachment K 1**

(A translation will be submitted at a later date.)

The patent is based on an application of July 9, 2007 and asserts the priority of applications US 60/868,818 and US 11/622,551. The application was published on June 6, 008, and the publication of the grant of patent on May 2, 2012.

6. The patent in suit is in force in Germany. A current extract form the register of the German Patent and Trademark Office is submitted as

**Attachment K2.**

A nullity action brought by Harman Becker Automotive Systems GmbH against the German part of EP '052 asserted in this case is currently pending at the Federal Patent Court. We expect that the notice will be issued to the parties in accordance with Section 83 of the (German) Patent Act some time in autumn 2019.

7. The original patent owner was Broadcom Corporation, Irvine, California, USA. In the declaration of January 20, 2017, attached as

**Attachment K2a,**

Broadcom Corporation assigned all rights to the patent in suit to Avago Technologies

EIP Europe LLP
Complaint of August 2, 2019

Page 11

General IP (Singapore) Pte. Ltd. with effect from November 28, 2016, including the right, by taking appropriate legal action, to demand damages from third parties for infringement in the past, present and future ("the right to sue and recover damages for past, present and future infringement of any of the Patents ..."). The fact that the patent in suit belongs to the assigned patents ("the Patents") ensues from sheet 390 of "Attachment A" (comprising 1215 pages and submitted here in extracts) of the aforementioned declaration, where, as well as the European patent in suit, the German, French and British parts of the patent are deliberately listed under its publication number. Avago Technologies General IP (Singapore) Pte. Ltd. was then merged with the Claimant Avago Technologies International Sales Pte. Limited, by way of amalgamation with effect from September 5, 2018 (in accordance with the law of Singapore: "amalgamation of companies"). The Claimant, Avago Technologies International Sales Pte. Limited is thus the universal successor of the former patent owner Avago Technologies General IP (Singapore) Pte. Ltd. The patent in suit is thus transferred to the local Claimant by way of universal succession. This process is already on record in proceedings at Mannheim District Court, for example in matters 7 0 58/18 and 7 0 59/18. The Claimant also assumes, with a view to parallel proceedings between the parties, that the Respondents are aware of the processes and therefore foregoes the need to provide an in-depth explanation at this juncture.

## II.   Technical background and referred prior art

8.   The patent in suit relates in general to electronic power amplification. Some of the embodiments given as examples according to the patent in suit relate to a method and a system for sharing low noise amplifier (LNA) circuitry in a single chip Bluetooth and wireless local area network (WLAN) system (cf. para. [0001]).

9.   As background to the invention, the specification of the patent in suit states that communication devices increasingly have a wide range of functions, in particular the option for wireless communications under the Bluetooth protocol on the one hand and under the WLAN protocol on the other hand (cf. Para. [0002]).

EIP Europe LLP
Complaint of August 2, 2019

Page 12

10. The so-called front-end of the portable device is ascribed particular importance in the receiving of wireless WLAN and Bluetooth signals. Much of the front-end processing steps are performed in analog circuitry. The front-end is responsible in particular for receiving radio frequency signals with very limited strength. The tasks of a receiver could comprise the demodulation, the filtering and the analog-digital conversion. The result of the signal processed by the front-end could be referred to as a baseband signal. The baseband signal typically contains digital data, which may be subsequently processed in digital circuitry within the portable communication device. (cf. para. [0003]).

### III.   Technical problem

11. The problem goes hand in hand, however, with the change to portable and integrated devices that are capable of wireless communication using different services and protocols, so the patent specification in suit states that the analog radio frequency circuitry for each of the services and protocols can be accommodated in different integrated circuits ("integrated circuits" or ICs) or chips. This limits the scope of the potential miniaturization. For example, every integrated circuit must have its own low-noise amplifier (LNA), ("power amplifier" or PA) and quartz oscillator (cf. para. [0005]).

12. As a further advantage of the increased number of integrated circuits, the specification of the patent in suit further points out that there may also be a corresponding rise in power consumption within the portable device and consequently an increased operating temperature and reduced battery life as well (cf. para. [0006]).

### IV.   Solution

13. As a solution to this technical problem, that patent in suit specifies in the independent Claim 11 alongside dependent Claims 12 to 14 a system for processing signals received via a communication medium. The inventive teaching is realized thereby in the architecture of the chip described in Claim 11. The claims of interest in the present case, namely Claims 11, 12, 13 and 14, can be reproduced in the form of a characteristics analysis:

EIP Europe LLP
Complaint of August 2, 2019

**Claim 11:**

a.   A system for processing signals received via a communication medium, the system comprising:

b.   a chip

    b1)   a chip comprising a first radio or first receiver

    b2)   used for processing a signal for a first wireless protocol; a signal for a second wireless protocol,

c.   and said chip comprises a shared LNA,

    c1)   enables receiving said signal for said first wireless protocol and

    c2)   a signal for a second wireless protocol,

d.   whereby a transconductance amplifier

    d1)   within said chip

    d2)   is utilized to couple an output of said shared LNA to said first radio or first receiver;

e.   said shared LNA is integrated within a second radio or second receiver in said chip

f.   used for processing said signal for said second wireless protocol.

**Claim 12:**

g.   whereby said second radio or second receiver is a WLAN radio or WLAN receiver.

EIP Europe LLP                                                                    Page 14
Complaint of August 2, 2019

**Claim 13:**

h)   wherein said transconductance amplifier is integrated within said second
     radio or second receiver.

**Claim 14:**

i)    wherein said first radio or first receiver is a Bluetooth radio or Bluetooth
      receiver.

14.   We submit an informal copy of the characteristics analysis (in triplicate for the board)
      as

**Attachment K3.**

15.   In <u>characteristic a)</u> Claim <u>11</u> describes a system for processing signals received via a
      communication medium. The patent in suit understands communication medium to be
      in particular the air interface because, according to Claim 11 itself, the description and
      the dependent Claims 12 and 14, it supposedly concerns the receiving and processing
      of wirelessly transmitted signals.

16.   According to <u>characteristic group b) to b1)</u> of Claim 11, the system comprises a chip
      which in turn comprises a first radio device or first receiver. A chip is a semiconductor
      substrate to which circuits are applied. The advantage thereof is that in this way circuits
      can be realized in a particularly small space. In the embodiments, the antenna and the
      transmit/receive switch on the one hand and the digital baseband processor on the
      other hand are not shown as part of the receiver. This can be inferred for example from
      Figure 1 of the patent in suit reproduced below:

EIP Europe LLP
Complaint of August 2, 2019

Page 15



**FIG.1**

17.   By way of contrast, components of the receiver or of the radio are for example the second amplification stage and the frequency mixer (cf. para. [0032] and [0035]), as can also be seen in Figure 3 of the patent in suit



**FIG.3**

18.    The patent description further explains that a receiver can have an analog-digital converter; however it does not have to (cf. para. [0022]).

19.    According to characteristic b2) of Claim 11, the chip is used for the purpose of being able to process a signal for a first wireless protocol. A protocol is an agreement (frequently documented in standards) according to which the data transfer runs between two or more communication units. As examples of wireless protocols, in dependent Claims 12 and 14 the patent in suit itself names the Bluetooth protocol and the WLAN protocol.

20.    The chip further has a shared LNA (characteristic c) of Claim 11). This facilitates the receiving of the signal for the first wireless protocol and a signal for a second wireless protocol (characteristics d) and c2) of Claim 11). The person skilled in the art understands LNA to mean a low noise amplifier, cf. para. [0011]). An amplifier is an electronic assembly that amplifies an input variable to an output variable. A low-noise amplifier is characterized by the fact that it amplifies without significantly impairing the signal-to-noise ratio. Particularly with devices for receiving and for analog processing of wireless signals whose signal-to-noise ratio is already very poor anyway on a regular basis, it therefore forms one of the first components in the receive path.

21.    The chip further has a transconductance amplifier (characteristics d) and d1) of Claim 11). A transconductance amplifier is an amplifier which can be used to convert a voltage signal into a current signal. This is explained for example in paragraph [0042] of the patent description. According to the patent in suit, the transconductance amplifier is used to couple an output of the shared LNA to the first radio or first receiver (characteristic d2). According to one embodiment of the invention according to the patent in suit, the transconductance amplifier is used for example to transfer the signal from the WLAN radio to the Bluetooth radio over the long transmission line associated with signal loss (cf. para. [00361). This is shown schematically in Figure 3 of the specification of the patent in suit:

EIP Europe LLP
Complaint of August 2, 2019



**FIG.3**

22.     Finally, according to <u>characteristic e)</u> of Claim 11 the shared LNA is integrated in the chip in a second radio or second receiver. <u>According to characteristic f)</u> of Claim 11, the second radio or second receiver is also used for processing the signal for the second wireless protocol. The patent description reveals what is means by the wording "integrated ... in the second radio or second receiver". Therefore, this characteristic is then realized in particular when the shared LNA is used functionally to amplify the signal of the second radio and is located locally in the region of the chip, which corresponds to the second radio (cf. para. [0032]). The advantage thereof is that, due to the short distance to the further electronic components processing the signal of the second radio, no long transmission line to these is required, under which the signal quality for the second radio would suffer (cf. para. [0035]).

EIP Europe LLP                                                                                                     Page 18
Complaint of August 2, 2019

23.   The teaching according to the patent in suit is then particularly advantageous if the
      second radio or the second receiver is a WLAN radio or a WLAN receiver (Claim 12 /
      characteristic g) and the first radio or the first receiver is a Bluetooth radio or a Bluetooth
      receiver (Claim 14 / characteristic i). Moreover, it is advantageous according to the
      patent in suit for the transconductance amplifier to be integrated into the second radio
      or second receiver (Claim 13, characteristic h), thus in the WLAN radio or WLAN
      receiver.

24.   In this context, we stress that, in the stated spatial-physical characteristics, Claim 11 of
      the patent in suit (and thus the dependent claims) refers exclusively to the chip and the
      components contained therein which are no longer changed after manufacture of the
      chip. It is about the internal chip structure, i.e. the hardware configuration. In relation to
      the LNA, accordingly the relevant English claim does not refer to a "use" or similar but
      rather only to a "shared LNA". This means that the chip is set up such that the LNA
      (308) is interconnected with the transconductance amplifier TCA (315A) so that WLAN
      and Bluetooth signals adjacent to the chip input can be transmitted to the LNA (308) or
      to the TCA (315A) in a manner according to the claim. External circumstances, in
      particular the issue of whether a shared signal is actually present at the input, thus do
      not play any part in the realization of the characteristics of Claim 11. On the contrary,
      a claim is utilized when a product (here, a chip) is suitable for this due to the realization
      of the relevant spatial-physical characteristics.

      As evidence of this expert understanding, we provide:

      **Evidence:**            Expert report.

EIP Europe LLP
Complaint of August 2, 2019

Page 19

### C.    Patent infringement

25.    The Respondents supply and distribute the head unit 6512-9877375 (DE) with vehicles sold under the "BMW" brand, for example the BMW 5 series. The head units are part of the BMW infotainment system. Smartphones can be connected to such vehicle-bound systems via Bluetooth. The provision of a WLAN (IEEE 802.11) hotspot has also recently been added.

26.    The Claimant asked TechInsights, the analytical company known to the Court, to investigate as an example the head unit of a BMW of the BMW 5 series acquired within the scope of application of the patent in suit. We submit a copy of the investigation report as

**Attachment K4.**

The Respondent's responsibility for offer and sale can be seen for example from the label (BMW emblem at the top) on p. 5 and 8, but also from p. 6 and 12 ("BMW").

27.    A functional unit in the form of a smaller circuit board which is connected to the larger circuit board with contact pins is located on one of the circuit boards installed in the head unit (see p. 60 of Attachment K 4):

EIP Europe LLP
Complaint of August 2, 2019

Page 20



█ Marvell 88W8787 Bluetooth/WLAN SoC
█ Maxim MAX4835 LDO Linear Voltage Regulator
█ Microchip 25AA080CI Serial EEPROM 8 Kb
█ Microsemi LX5511 Power Amplifier for WLAN Applications

BT/WLAN Module with Shielding Removed

28.   The microchip marked in light blue in this image is the Avastar 88W8787 SoC type
      manufactured by Marvell Semiconductor Inc., Santa Clara, CA, USA. We submit a
      datasheet for the product from the manufacturer Marvell as

**Attachment K 5.**

*Reference Translation – may contain inconsistencies*

29.   The introduction on the first sheet states:

>   "*The Marvell® Avastar™ 88W8787 is a highly integrated system-on-a-chip (SoC), specifically designed to support high throughput data rates for next-generation products. The Marvell Avastar family of wireless devices delivers best-in-class single-function and multi-function radios for the entire spectrum of always-on consumer electronics devices.*
>
>   *The Marvell Avastar 88W8787 SoC is designed for both simultaneous and independent operation of the following:*
>
>   *IEEE 802.11a/g/b and 802.11 n payload data rates for Wireless Local Area Network (WLAN)*
>
>   *Bluetooth 3.0 + High Speed (HS) (also compliant with Bluetooth 2.1 + EDR) FM*
>
>   *transmit and receive (digital encode / decoder FM radio with RDS/RBDS)*"

In German:

>   "*Der Marvell® Avastar™ 88W8787 ist ein hochintegriertes system-on-a-chip (SoC), das speziell für einen hohen Datendurchsatz für Produkte der nächsten Generation ausgelegt ist. Die Familie der Marvell Avastar-Geräte liefert die besten Einzelfunktion- and Multifunktion-Funkeinheiten für das gesamte Spektrum stets eingeschalteter Konsumenten-Elektronik-Produkte.*
>
>   *Der Marvell Avastar 88W8787 SoC ist sowohl für gleichzeitigen als auch unabhängigen Betrieb der folgenden (Systeme, A.d.Ü.) ausgelegt:*
>
>   *IEEE 802.11a/g/b und 802.11n Nutzdatenraten for Wireless Local Area Network (WLAN)*
>
>   *Bluetooth 3.0 + High Speed (HS) (auch kompatibel mit Bluetooth 2.1 + EDR)*
>
>   *FM Senden und Empfangen (digitales Codier / Decodier FM-Radio mit RDS/RBDS)*"

30.   In the specifications on page 3 of Attachment K 5, the application for devices equipped with WLAN and the coexistence with other radio units located on the chip is pointed out in particular:

## SPECIFICATIONS

**APPLICATIONS**

- WLAN/Bluetooth/FM enabled cellular handsets
- Portable audio/video devices and accessories
- Personal navigation devices
- Personal digital assistants
- Gaming platforms

**GENERAL FEATURES**

- Simultaneous and independent WLAN, Bluetooth, and FM Tx/Rx operation
- Coexistence with cellular and other on-chip radios
- Low power dissipation
- CMOS and low-swing sine wave input clock
- Digital audio interfaces (I2S and PCM)
- 12, 13, 19.2, 24, 26, 38.4, and 52 MHz crystal clock support with auto frequency detection using external 32.768 KHz CMOS-level sleep clock
- Power management with external sleep clock support for FM Tx/Rx operation
- Sleep and standby modes for low power operation
- Fully compatible with Marvell Power Management device(s)

31.   A block diagram of the system is depicted at the bottom of the first sheet of

Attachment K 5, which we attach as

**Attachment K 6**

and reproduced below:

EIP Europe LLP                                                                                           Page 23
Complaint of August 2, 2019



Fig 1. Broadcom BRM6367 SoC Block Diagram

32.   A part of the block diagram relating to the functions of interest here ("top right") is
       shown below:



EIP Europe LLP
Complaint of August 2, 2019

Page 24

33.  An antenna symbol can be seen there on the far right out of which radio signals run to the left into the block marked with "SP3T". This is a triple switch with a single switching level ("Single Pull Triple Throw"), so that here in each case only one of the three connections that can be seen on the left can be controlled.

34.  The middle connection on the left side of the switch transmits WLAN transmission signals (WLAN Tx) to the antenna.

35.  The bottom connection establishes the connection for Bluetooth transmission and receiving signals (Bluetooth Tx/Rx).

36.  However, the focus is on the top connection which represents a shared receiving path for Bluetooth and WLAN signals. "RX" stands for "receive". This shared receiving path incorporates within the "direct conversion RF" subassembly a jointly utilized low-noise amplifier, which is appropriately described as a "shared LNA".

37.  Functionally, this assumes the function of the first amplification level, namely, both for receiving WLAN signals and for receiving Bluetooth signals.

38.  Just as in the embodiment depicted in Fig. 3 of the patent in suit, the signal amplified by the jointly utilized low-noise amplifier is initially split into two receiving paths and is redirected to the respective second amplification levels (each labeled with "LNA" following "shared LNA"). Here, one of the receiving paths leads directly to a (not jointly utilized) LNA allocated to the WLAN receiver or the WLAN radio. The other, however, leads to a further (not jointly utilized) LNA via a long transmission line. The latter not jointly utilized LNA, as will be shown below by reference to Attachment K 7, is or incorporates a transconductance amplifier, amplifies which the signal received by the jointly utilized LNA for further processing in the Bluetooth receiver or the Bluetooth radio.

39.   In the block diagram in accordance with Attachment K 6, the jointly utilized LNA and the subsequent WLAN-LNA are arranged at the same level as the gray rectangle (WLAN RF) (and are connected to this by a short arrow). Hence, both subassemblies are directly spatially allocated to the WLAN radio.

40.   In accordance with the diagram in the datasheet, the datasheet, in the right-hand column on page 2 in the third bullet point of the "WLAN BASEBAND" section, explains that the LNA jointly utilized for WLAN and Bluetooth also proves useful for the "WLAN BASEBAND" processing ("WLAN/Bluetooth LNA sharing"). At the end of the "WLAN RADIO" section, in the right-hand column on page 2 of Attachment K 6, reference is also made to the jointly utilized input components for WLAN and Bluetooth. Both passages referred to are reproduced below:

WLAN BASEBAND
* 802.11n 1x1 SISO with on-chip Marvell SISO RF radio
* Backward compatibility with legacy 802.11a/g/b technology
* WLAN/Bluetooth LNA sharing
* PHY data rates up to 150 Mbps
* 20, 40, 20 in 40 MHz, and duplicate legacy mode operation
* Modulation and Coding Scheme (MCS)—0~7 and 32 (duplicate 6 Mbps)
* Enhanced radar detection for long and shot pulse radar
* Enhanced AGC scheme for DFS channel
* Japan DFS requirements for W53 and W56
* Radio resource measurement
* Optional 802.11n SISO features:
   - 20/40 MHz coexistence
   - 1-stream STBC reception
   - Short guard interval
   - RIFS on receive path
   - Beamformee function and hardware acceleration
   - Greenfield Tx/Rx
* Power save features

WLAN RADIO
* Integrated direct-conversion radio
* 20 and 40 MHz channel bandwidths
* Shared WLAN/Bluetooth receive input scheme for 2.4 GHz band

41. More details on the techniques utilized by the manufacturer of the Avastar 88W8787 SoC, Marvell Semi-conductor, in the production of SoCs with a jointly utilized LNA ("shared LNA") and hence, in particular, concerning the design and functionality of the contested embodiment, can be found in the publication, "A WLAN and Bluetooth Combo Transceiver with integrated WLAN Power Amplifier, Transmit-Receive Switch and WLAN/Bluetooth Shared Low Noise Amplifier" authored by Renaldi Winoto, Ming He, Yuan Lu, David Signoff, Edwin Chan, Chi-Hung Lin, Wayne Loeb, Jinho Park and Li Lin, already addressed above as Attachment K 7. According to the publication itself and according to their Linkedin profiles, these authors are engineers with the manufacturer of the Avastar 88W8787 SoC. We submit a copy of the publication (described in the following as "Winoto") as

**Attachment K 7,**

together with printouts of the abovementioned Linkedin profiles as

**Attachment K 8.**

42. In this publication, engineers with the manufacturer of the Avastar 88W8787 describe how they economically produced a combined Bluetooth and WLAN receiver, integrated in a chip, with a "shared LNA", i.e. a jointly utilized LNA.

> *"Abstract − A front-end circuit of a System-on-a-Chip (SoC) containing an IEEE 802.11b/g/n wireless LAN (WLAN) and a Bluetooth transceiver is presented. This SoC integrates a WLAN power amplifier (PA), a transmit-receive switch (T/R switch), a process and temperature insensitive power detector, and a **low-noise amplifier (LNA) that is shared between WLAN and Bluetooth.** The class AB power amplifier has a maximum saturated output power of +29dBm, while still meeting - 28dB EVM for QAM64 modulation at an output power of +21 dBm. The shared low-noise amplifier has a noise figure of 3.3dB. **The presented solution significantly reduces the overall Bill-of-Materials (BOM) for the combo WLAN and Bluetooth transceivers."***

> (Attachment K 7, p. 395, Abstract; emphasis added)

EIP Europe LLP                                                                      Page 27
Complaint of August 2, 2019

In German:

> *"Zusammenfassung – Ein Front-End-Schaltkreis eines System-on-a-Chip (SoC) enthaltend ein IEEE 802.11b/g/n wireless LAN (WLAN) und einen Bluetooth-Sender/Empfänger wird vorgestellt. Dieses SoC integriert einen WLAN-Leistungsverstärker (PA), einen Sende-Empfangs-Schalter (T/R Schalter), einen prozess- und temperaturunempfindlichen Leistungsdetektor und einen* **rauscharmen Verstärker (LNA), der von WLAN und Bluetooth gemeinsam genutzt wird.** *Der Leistungsverstärker der Klasse AB hat eine maximale gesättigte Ausgangsleistung von +29 dBm, erreicht aber -28dB EVM für QAM64- Modulation bei einer Ausgangsleistung von +21 dBm. Der gemeinsam genutzte rauscharme Verstärker hat einen Rauschwert von 3.3 dB.* **Die vorgestellte Lösung verringert signifikant die allgemeinen Materialkosten (BoM) für die kombinierten WLAN und Bluetooth- Empfänger."**

> (Attachment K 7, p. 395, Abstract; emphasis added)

43.    Moreover, the term "shared LNA", as it is also used in the datasheet for the Avastar 88W8787 SoC, is found in the keyword index ("Index Terms").

44.    In addition, the "1. Introduction" section of the publication, with reference to Fig. 2, states that the object of the publication is an integrated SoC ("System on a Chip") with Bluetooth and WLAN functionality:

> *"The front-end circuit presented in this paper integrates a WLAN PA, a T/R switch, and a* **shared LNA that can be simultaneously used by WLAN and Bluetooth into a single CMOS SoC** *(Fig. 2). The SoC also contains a separate Bluetooth PA, the design of which is outside the scope of this paper, along with all necessary baseband and digital circuits to fully support single-chip operation for both WLAN and Bluetooth standards."*

> (Attachment K 7, p. 395, right-hand column; emphasis added)

In German:

> *"Der Front-End-Schaltkreis, der in diesem Papier vorgestellt wird, integriert einen WLAN-PA, einen T/R-Schalter und* **einen gemeinsam genutzten LNA, der von WLAN und Bluetooth simultan genutzt werden kann, in einem einzigen CMOS SoC** *(Fig. 2). Das SoC enthält auch einen separaten Bluetooth-PA, dessen Aufbau nicht Gegenstand dieses Papieres ist, neben allen notwendigen Basisband- und digitalen Schaltkreisen, um den Betrieb sowohl für den WLAN- als auch für den Bluetooth-Standard auf einem einzigen Chip zu unterstützen."*

> (Attachment K 7, p. 395, right-hand column; emphasis added)

EIP Europe LLP
Complaint of August 2, 2019

Page 28

45.   In the "1. Introduction" section, then, the publication explicitly states that "[t]he front-end circuit presented in this paper integrates a WLAN PA, a T/R switch, and a shared LNA that can be simultaneously used by WLAN and Bluetooth into a single CMOS SoC (Fig. 2)", that is, in German, that "der in dieser Veröffentlichung behandelte Front-End-Schaltkreis integriert einen WLAN-Leistungsverstärker (PA), einen Sende-Empfangs-Schalter (T/R Schalter) und einen gemeinsam genutzten LNA, der von WLAN und Bluetooth simultan genutzt werden kann, in einem einzigen CMOS SoC (Fig. 2)".

46.   A block diagram of this chip is depicted in Fig. 2 on page 396 of the publication. This block diagram is reproduced below and the section of interest here is marked in color because this shows the jointly utilized LNA and a transconductance amplifier used for coupling the output of the jointly utilized LNA with the Bluetooth receiver or Bluetooth radio as a part of the chip.



Fig. 2. Integrated WLAN front-end with shared WLAN/Bluetooth LNA.

EIP Europe LLP
Complaint of August 2, 2019

Page 29

47.   Here, the jointly utilized LNA is not depicted as merely a block symbol, but more specifically as a cascode amplifier based on two transistors, which amplifies an input signal into a higher output signal. The region of the chip corresponding with this cascode amplifier is highlighted in color in the following reproduction of Fig. 2 of the Winoto publication:



Fig. 2. Integrated WLAN front-end with shared WLAN Bluetooth LNA.

48.   Furthermore, the block diagram in Fig. 2 of the Winoto publication (as shown in the embodiment in Fig. 3 of the patent in suit) depicts a split of the output signal of the jointly utilized LNA into a WLAN path and a Bluetooth path, each of which, in turn, is provided with an amplifier. In the following reproduction of Fig. 2, this region of the SoC is highlighted in red.

EIP Europe LLP                                                                                          Page 30
Complaint of August 2, 2019



Fig. 2. Integrated WLAN front-end with shared WLAN/Bluetooth
LNA.

49.    In the "C. WLAN/Bluetooth Shared Mode" section of the Winoto publication, it is stated
       in this regard that the output of the jointly utilized LNA controls two amplifiers, one of
       which directly controls the WLAN mixer and the other sends the radio frequency signal
       received by the jointly utilized LNA, not in voltage mode but in current mode, to the
       Bluetooth receiver:

             *"A single-pin WLAN and Bluetooth shared receive mode is implemented in this chip.
             The output of the above described **LNA drives two amplifiers. One amplifier
             directly drives the WLAN mixer, while the other sends the current- mode RF
             signal across a distance** to a commongate buffer within the **Bluetooth
             transceiver block."***

                                              (Attachment K 7, p. 397, bridging paragraph between the left-hand
                                              column and the right-hand column; emphasis added)

*Reference Translation – may contain inconsistencies*

In German:

*"Ein gemeinsamer WLAN- und Bluetooth-Empfangsmodus über einen einzelnen Anschluss ist in diesem Chip implementiert. Der Ausgang des oben beschriebenen LNA **steuert zwei Verstärker an. Ein Verstärker steuert direkt den WLAN-Mischer an, der andere sendet das RF-Signal im Strommodus über eine Distanz** an einen im **Bluetooth-Sender-/Empfänger-Block** befindlichen Puffer in Gateschaltung."*

> (Attachment K 7, p. 397, bridging paragraph between the left-hand column and the right-hand column; emphasis added)

50. Two points emerge from these statements:

51. Firstly, it follows from the fact that transmission of the signal received to the WLAN receiver is not necessary, that the jointly utilized LNA is already located in that region of the chip, where the WLAN receiver is arranged.

52. In addition, the signal is sent in current mode to the Bluetooth receiver. It follows from this that the amplifier controlled by the jointly utilized LNA ("bottom left" in the figure: "to Bluetooth") converts a voltage signal into a current signal. This, then, is a transconductance amplifier. This is confirmed by the trapezoid symbol representing this amplifier, which usually stands for a transconductance amplifier.

53. Hence, the Bluetooth radio can process the signal of the current mode of operation if it has a load enabling it to convert the current mode of operation back to an amplified voltage (LNA load).

54. In this regard, we note that the developers of the Marvell 8787 chips also indicated a joint transmission of WLAN and Bluetooth signals via two antennas (Attachment K 7, p. 397, left-hand column, second to last paragraph).

55. In addition, the Claimant also asked the TechInsights company to extract the circuit and for an analysis related to these in view of the Marvell 88W8787 chip in question in the present case. Accordingly, TechInsights examined multiple samples. This analysis was made in the course of the Claimant's previous litigation with companies allied to a competitor of the Respondents before the Mannheim Regional Court (2 0 267/17) concerning the present patent in suit. Here, the parties settled before an adjudication was made.

EIP Europe LLP
Complaint of August 2, 2019

Page 32

56.    A copy of this TechInsights analysis is submitted as

**Attachment K 9.**

We refer, in particular, to Fig. 2.3.2. on p. 8 of the report, reproduced below.



57.   The figure clarifies the location and the function of fundamental elements relevant to the patent in suit using colored markings. The location of the input (purple) is shown at the bottom of the figure. The blue rectangle shown on the right marks the WLAN functional unit; the red square on the left-hand side shows the Bluetooth unit. The approximate position of the jointly utilized LNA (indicated here by a green triangle) is indicated by a green arrow; the approximate location of the downstream transconductance amplifier, TCA (indicated here by a yellow trapezoid) is indicated by a yellow arrow. The TCA is located in the WLAN receiver. A transmission line between the TCA and the Bluetooth radio is denoted by a thick dark blue line from the right-hand edge of the blue WLAN rectangle to the right-hand edge of the red Bluetooth square.

### I.   The form of infringement makes use of Claims 11, 12, 13 and 14 of the patent in suit

58.   The infringing form, as emerges both from the functional description and from the block diagrams of the Avastar 88W8787 SoC semiconductor system in Attachment K 5, is a system for processing signals received via a communication medium, to wit a system which can receive and process signals wirelessly via the radio interface WLAN and Bluetooth. Characteristic a) of Claim 11 is realized.

59.   The infringing form has a chip in the form of the Avastar 88W8778 SoC, which has a first radio device or a first receiver in the form of a Bluetooth radio or Bluetooth receiver. Hence, the chip is suitable for receiving and processing signal for a first wireless protocol and is utilized in this purpose. Hence, characteristics b), b1) and b2) of Claim 11 are realized.

60.   Furthermore, according to the block diagrams in the datasheet for the Avastar 88W8787 SoC in accordance with Attachment K 5 and in the Winoto publication, the chip comprises a jointly utilized LNA ("shared LNA"), which enables the signal for the first wireless protocol, the Bluetooth protocol, and a signal for a second wireless protocol, the WLAN protocol, to be received. Hence, characteristics c), c1) and c2) of Claim 11 are realized.

61.    Furthermore, the Avastar 88W8787 SoC also incorporates a transconductance amplifier. This is arranged after the jointly utilized LNA and after splitting the signal into a Bluetooth and a WLAN receiving path and couples the output of the jointly utilized LNA to the Bluetooth radio or the Bluetooth receiver, i.e. to the first radio device or the first receiver, which processes signals for the first wireless protocol. Consequently, characteristics d), d1) and d2) of Claim 11 are realized.

62.    Finally, the jointly utilized LNA is also integrated in a second radio device or second receiver in the chip because the jointly utilized LNA, as shown above with reference to Attachment K 5, is located in a region of the Avastar 88W8787 SoC, which is allocated to the WLAN radio or WLAN receiver, which is also suitable for processing the signal for the WLAN protocol, i.e. for the second protocol, and is utilized for this purpose. Hence, characteristics e) and f) of Claim 11 as well as Claim 12 are realized.

63.    Hence, the system described.makes use of all the characteristics of Claims 11 and 12 of the patent in suit.

64.    Furthermore, the transconductance amplifier, TCA, is located in the WLAN receiver (see the figure from Attachment K 9, above). Consequently, Claim 13 is realized.

65.    Since, as described above, the first radio device or the first receiver is a Bluetooth radio or Bluetooth receiver, the dependent Claim 14 is also realized.

**Evidence:**     Expert opinion

### D. Legal consequences

66. The manufacture, supply and marketing of the infringing forms in Germany or from Germany across the world involves a direct infringement of Claims 11, 12, 13 and 14 of the patent in suit pursuant to Art. 64 of the European Patent Convention in conjunction with Art. 9, s. 1 of the (German) Patent Act.

67. As a specialized company, article Respondents are obligated to acquaint themselves with the applicable industrial property rights of third parties and to observe these. The infringing actions were committed in the knowledge of the legal position and, in any case, are grossly negligent.

68. On the grounds of the abovementioned patent infringement, the Claimant is due injunctive relief in respect of the Respondents in accordance with the motion for judgment I. 1. pursuant to Art. 139, s. 1 of the (German) Patent Act in conjunction with Art. 64, s. 1 and s. 3 of the European Patent Convention and Art. 79 of the European Patent Convention.

69. The claims for disclosure and rendering of accounts asserted with the motions for judgment in regard to I.2. and I.3. Follow from Art. 64, s. 1 and s. 3 and Art. 79 of the European Patent Convention in conjunction with Artt. 242, 259, 260 of the (German) Civil Code and Art. 140b of the (German) Patent Act. Since the Claimant is not aware of the extent of the infringing actions, the Respondents, in accordance with the established case law, must furnish particulars and render account in order to enable the calculation of the indemnity and the compensation claim. Furthermore, the disclosure pursuant to Art. 140b of the (German) Patent Act serves to eliminate further sources of infringement.

70. The claims for recall, destruction and removal from the distribution channels asserted with the motions for judgment in regard to I.4., I.5. and I.6. follow from Art. 64, s. 1 and s. 3 and Art. 79 of the European Patent Convention in conjunction with Art. 140a of the (German) Patent Act.

71.   The claim for the assessment of compensation asserted with the motion for judgment in regard to II. follows from Art. 64, s. 1 and s. 3 and Art. 79 of the European Patent Convention in conjunction with Art. 139, s. 1 and s. 2 of the (German) Patent Act and Art. 256 of the (German) Code of Civil Procedure. Due to the infringing actions of the Respondents, the Claimant is due considerable damages, which, as joint debtors, the Respondents, acting in concert, must compensate. Definitive damages cannot be calculated prior to the rendering of accounts, however, so that only suit for assessment can currently be filed.

72.   The local responsibility of the Hamburg Regional Court follows from that the infringing objects are supplied and distributed with the knowledge and consent of the Respondents throughout Germany and hence also within the jurisdictional area of the Court, Art. 32 of the (German) Civil Code.


Florian Schmidt-Bogatzky
Attorney-at-Law

Notarized
*[signature]*
Attorney-at-Law

EIP Europe LLP                                                                                      Page 37
Complaint of August 2, 2019

## List of Attachments

| | |
|---|---|
| **Attachment K 1** | Patent in suit EP 1 931 052 B1 |
| **Attachment K 2** | Register extract EP 1 931 052 B1 |
| **Attachment K 2a** | Assignment EP 052 BRCM – Avago Gen IP |
| **Attachment K 3** | Characteristics analysis, Claims 11 to 14 |
| **Attachment K 4** | TechInsights Teardown Marvell 88W8787, July 2019 |
| **Attachment K 5** | Marvell Avastar 88W8787 SoC Data Sheet |
| **Attachment K 6** | Block Diagram, Marvell Chip 88W8787 SoC |
| **Attachment K 7** | Winoto article |
| **Attachment K 8** | Linkedin Winoto |
| **Attachment K 9** | TechInsights circuit extraction |