United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE EX PARTE APPLICATION OF
BAYERISCHE MOTOREN WERKE AG
AND BMW BANK GMBH,

Applicants.

Case No. 19-mc-80272-WHO (VKD)

**ORDER RE BROADCOM'S MOTION
TO QUASH DEPOSITION SUBPOENA**

Re: Dkt. No. 66

Respondents Broadcom Corporation, Broadcom Inc., and Broadcom Technologies Inc. (collectively "Broadcom") ask the Court to quash deposition subpoenas served by applicants Bayerische Motoren Werke AG and BMW Bank GmbH (collectively "BMW") pursuant to this Court's order authorizing discovery under 28 U.S.C. § 1782. Dkt. No. 66. The Court held a hearing on this dispute on September 22, 2020. Dkt. Nos. 74, 77.

For the reasons explained below, the Court grants in part and denies in part Broadcom's motion to quash. The Court also orders that counsel confer further regarding certain matters.

I.    **BACKGROUND**

On November 13, 2019, the Court granted BMW's application pursuant to 28 U.S.C. § 1782 for an order authorizing issuance of identical document and deposition subpoenas to multiple Broadcom entities to obtain evidence for use in patent infringement and invalidity/nullity proceedings in Germany. Dkt. No. 11. That order permitted a subsequent motion to quash or to further modify the subpoenas by any of the subpoena recipients. *Id.* at 8.

According to the parties, there are three proceedings pending in Germany that involve issues of infringement and/or invalidity (nullity) as to three Broadcom patents: EP'531, EP '181

and EP '052.  None of the proceedings involves damages for infringement; however, the German

court does consider the "value of litigation" in setting attorneys' fees and court fees that are

prescribed by statute.  *See* Dkt. No. 77 at 5:23-8:9.

BMW seeks a Rule 30(b)(6) deposition of Broadcom[1] on 20 topics.  Dkt. No. 66-2, Exs. A-

C.  Broadcom refuses to provide testimony on any topic and moves to quash BMW's subpoenas in

their entirety.

## II.      LEGAL STANDARD

Discovery in this matter is governed by the Federal Rules of Civil Procedure.  *See* 28

U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16

F.3d 1016, 1020 (9th Cir. 1994) (unless district court orders otherwise, discovery must be obtained

in accordance with the Federal Rules of Civil Procedure); *Heraeus Kulzer, GmbH v. Biomet, Inc*.,

633 F.3d 591, 594, 597 (7th Cir. 2011) (applicant may obtain discovery as if matter had been

brought in domestic court).

A party may obtain discovery of any matter that is relevant to a claim or defense and that is

"proportional to the needs of case, considering the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

## III.     DISCUSSION

The parties could not reach agreement on any aspect of any proposed deposition topic.  As

reflected in the discussion below, some topics clearly encompass information that both parties

agree is discoverable, while others clearly encompass information that the Court has already found

not discoverable.  The Court is dismayed that the parties could not at least reach agreement on

those matters.  The Court expects better from sophisticated parties and experienced counsel.

The Court considers and decides each dispute, topic by topic.

---

[1] BMW served identical deposition subpoenas on each Broadcom entity.  BMW advises that it
contemplates only a single Rule 30(b)(6) deposition of Broadcom.  Dkt. No. 67 at 24.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Topic No. 1

In Topic No. 1, BMW asks for testimony about "[t]he documents and other materials produced in response to in BMW's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and the efforts to collect and produce such documents and other materials."  BMW's principal focus is the second part of this topic—*i.e.,* Broadcom's efforts to collect and produce documents responsive to BMW's document requests. BMW argues that Broadcom has not produced responsive, non-privileged documents in its possession, custody or control, and BMW desires to uncover evidence of this failure of production by taking Broadcom's deposition.  Broadcom acknowledges that it may not have produced some documents that are responsive to BMW's document requests, but that is because the parties agreed in advance that Broadcom need not search for documents maintained by "privileged custodians" or in "privileged repositories."  Relying on this agreement, Broadcom did not collect or produce documents from outside counsel, in-house counsel, or any employee who works in Broadcom's legal department.  *See* Dkt. No. 77 at 15:22-17:15.  BMW contends that the agreement was intended to relieve Broadcom of an obligation to search through all of the files of the in-house legal department and outside counsel for responsive documents, but did not relieve Broadcom of the obligation to produce discrete, known, non-privileged documents that just happen to be housed in the legal department.  *Id.* at 19:23-21:16.

The subject matter of Topic No. 1 is not directly relevant to any issue in the German proceedings.  More importantly, requiring a corporate representative to answer questions in deposition on matters that are more appropriately resolved by discussions between counsel is not a proportionate use of this discovery tool.  The Court orders the parties to discuss and resolve their inconsistent understandings of their prior agreement regarding the collection and production of responsive documents.  Broadcom's motion to quash as to Topic No. 1 is granted.

### B.      Topic No. 2

In Topic No. 2, BMW asks for testimony about "[e]valuations regarding the value of the Asserted Patents."  Broadcom asserts that it has no such evaluations.  BMW insists that this topic encompasses information relevant to the German court's consideration of the "value of litigation,"

3

and that this consideration includes anything that might also bear on damages, even though damages are not at issue.

The Court has reviewed the declarations of German counsel for each party.  Dkt. Nos. 66-1, 67-2.  From these declarations, the Court understands that the German court will estimate the "value of litigation" for purposes of setting statutorily prescribed attorneys' fees and court fees.  *See* Dkt. No. 66-1 ¶ 4; Dkt. No. 67-2 ¶¶ 12-13.  The Court is not persuaded that BMW requires any fact discovery beyond what the Court has already ordered and what the Court orders with respect to Topic No. 9, below, in order to address the "value of litigation" in the German proceedings.  Broadcom's motion to quash is granted as Topic No. 2, except that BMW may ask Broadcom to confirm in deposition that it has not prepared or obtained an evaluation of the value of any of the asserted patents, as Broadcom has represented to this Court.  BMW may not use the deposition to obtain advance notice of what Broadcom's valuation-of-litigation arguments may be to the German court.

### C.    Topics Nos. 3 and 4

In Topic No. 3, BMW asks for testimony about "[a]ssignments of the Asserted Patents and the assignment authority of the individuals who executed such assignments."  In Topic No. 4, BMW ask for testimony about "[a]ny merger within the last five years between Broadcom and Avago or any affiliated entities, including, but not limited to, the merger between Avago Technologies General IP (Singapore) Pte. Ltd. and Avago Technologies International Sales Pte. Ltd., and the changed ownership of any Broadcom or Avago subsidiaries or affiliated entities, including, but not limited to, the Broadcom and Avago entities located in the Northern District of California."  BMW explains that these topics are relevant to the question of Broadcom's standing, and in particular, whether assignment of the patent rights was accomplished by persons with the requisite authority under German law.  Dkt. No. 67 at 14-15.  Broadcom concedes this information is relevant but argues that a deposition is not necessary because BMW already has responsive documents.  Dkt. No. 66 at 19.

Broadcom's argument is not convincing, and its refusal to provide deposition testimony about matters Broadcom concedes are relevant is not reasonable.  Broadcom's motion to quash is

4

denied as to Topics Nos. 3 and 4.  However, the Court notes that Topic No. 4 is broader than what BMW says is the necessary scope for deposition testimony.  The Court expects BMW to limit its questioning under Topic No. 4 to matters relevant to Broadcom's standing.

**D.      Topics Nos. 5 and 6**

In Topic No. 5, BMW asks for testimony about "[t]he methods, systems, or procedures employed to disclose prior art to the attorney(s) prosecuting the applications that led to the Asserted Patents and/or to the United States Patent and Trademark Office, the European Patent Office, or any other national or international patent issuing entity."  In Topic No. 6, BMW asks for testimony about "[a]ny prior art search in connection to the Asserted Patents performed by, at the direction of, or on behalf of Broadcom, Avago, or any affiliated entities."  BMW argues that the existence of prior art is relevant to the validity of the asserted patents.  Dkt. No. 67 at 10, 11. Broadcom agrees, but objects that the deposition topics seek testimony about how Broadcom searched for prior art and how it shared what it found with attorneys prosecuting patents on Broadcom's behalf—testimony that is likely privileged or mostly privileged.  Dkt. No. 66 at 16-17.  Both parties agree that the German proceedings do not include a claim or defense analogous to "inequitable conduct" in U.S. patent litigation.  Dkt. No. 77 at 49:6-50:6, 52:17-53:8.

While the Court agrees with BMW that the existence of prior art is highly relevant to the question of validity, Topics Nos. 5 and 6 do not ask for Broadcom's testimony about prior art. Rather, the topics are directed to discovery about whether and how Broadcom searched for or obtained prior art and how it communicated about that prior art with counsel.  In addition, BMW concedes that these topics are motivated in part by BMW's concern that Broadcom has not produced prior art in response to BMW's documents requests.  Dkt. No. 77 at 19:20-20:6, 57:22-58:16.

Broadcom's motion to quash Topics Nos. 5 and 6 is granted.  However, like Topic No. 1, the parties' dispute here appears to derive in part from their different understandings of their agreement excluding "privileged custodians" and "privileged repositories" from the scope of Broadcom's document search and production obligations.  The Court orders the parties to confer regarding whether prior art documents they both agree are relevant can be collected and produced

1    by Broadcom without undue burden, notwithstanding that such documents may be located in files

2    maintained by Broadcom's legal department.

3        **E.      Topic No. 7**

4        In Topic No. 7, BMW asks for testimony about "[i]nfringement or validity opinions and

5    any internal or external communications relating thereto that discuss: [1] EP '531, including, but

6    not limited to, the capability of the plurality of texture processors to process a second portion of

7    the plurality of the texture portions in parallel; [2] EP '181, including, but not limited to, the

8    implementation of the energy detect mode, the auto MDIX mode, and the generation/calculation

9    of the qualified energy; [3] EP '052, including, but not limited to, the integration of a shared LNA

10   in the WLAN radio."  BMW argues that such opinions are relevant to issues of infringement and

11   validity of the asserted patents and that it is not clear whether all such opinions or communications

12   about them are privileged.  Dkt. No. 67 at 13-14.  Broadcom objects to this topic as seeking

13   information that is necessarily privileged.  Dkt. No. 66 at 14.

14       During the hearing, BMW clarified that it wishes to confirm whether or not there are any

15   non-privileged infringement or validity opinions and whether Broadcom intends to rely on any

16   infringement or validity opinions in the German proceedings.  BMW represents that if the answers

17   to these questions is "no," then BMW would not question Broadcom's witness further regarding

18   this topic.  Dkt. No. 77 at 85:4-22.  The Court will permit BMW to ask these questions within the

19   scope of Topic No. 7.  Broadcom's motion to quash is denied as to non-privileged opinions.

20   BMW may not use the deposition to probe whether Broadcom obtained any privileged opinions

21   that it did not include on a privilege log.

22       **F.      Topics Nos. 8 and 15**

23       In Topic No. 8, BMW asks for testimony about "[a]ny investigation regarding the

24   functionality of the Accused Technology or any component of the Accused Technology."  In

25   Topic No. 15, BMW asks for testimony about "[i]nvestigations regarding the functionality of the

26   Texas Instruments DRA746 with power VRSGX544 dual core, the Texas Instruments OMAP5432

27   with power VRSGX544 dual core, the MICREL chip KSZ8864RMNU, or the Marvell Avastar

28   Chip 88W8787 SoC."  BMW argues that it seeks testimony about non-privileged investigations

United States District Court
Northern District of California

6

1    conducted by Broadcom of the accused technology and disavows any intention of questioning

2    Broadcom about privileged investigations.  Dkt. No. 67 at 9-10, 11-12.  Broadcom objects to these

3    topics as seeking information that is necessarily privileged.  Dkt. No. 66 at 14-15.

4          Broadcom's investigations of the accused technology are not directly relevant to any issue

5    of infringement in the German proceedings, which will consider whether there is or is not

6    infringement based on whatever evidence and argument is presented to the German court.

7    However, the Court agrees with BMW that if Broadcom previously conducted an investigation

8    and concluded that a now-accused product did not infringe and now takes a contrary position, the

9    reasons for Broadcom's different views may inform the German court's consideration of the

10   evidence and arguments presented.  *See* Dkt. No. 77 at 63:13-64:16.

11         BMW may question Broadcom about non-privileged investigations of the accused

12   technology, if any exist.  The Court denies Broadcom's motion to quash as to Topics Nos. 8 and

13   15 for this purpose.  However, BMW may not use the deposition to explore the adequacy or

14   inadequacy of Broadcom's investigations, and BMW also may not use the deposition to probe

15   whether Broadcom conducted any privileged investigations that it did not include on a privilege

16   log.

17   **G.    Topic No. 9**

18         In Topic No. 9, BMW asks for testimony about "[a]ny efforts to sell, license, or monetize

19   the Asserted Patents, including any agreements, licenses, contracts, settlements, or proposals,

20   relating to the Asserted Patents or the technology described in the Asserted Patents."  This

21   deposition topic encompasses both consummated licenses and agreements and proposed licenses

22   and agreements, or other efforts to monetize the patents.

23         Broadcom concedes that it should be required to provide testimony about the responsive

24   licenses and agreements it has already produced to BMW.  Dkt. No. 77 at 26:13-23, 33:4-12.

25   Broadcom's motion to quash with respect to this aspect of Topic No. 9 is denied.  For the

26   avoidance of doubt, Broadcom's witness should be prepared to answer questions about how the

27   royalty rates in the agreements were set and what considerations they reflect, to the extent that

28   information is known to Broadcom.  In addition, the Court will permit BMW to obtain testimony

United States District Court
Northern District of California

1    about Broadcom's licensing practices with respect to the asserted patents along the lines discussed

2    at the hearing.  *See id.* at 29:21-30:2.

3           In considering the parties' document production disputes, the Court has already concluded

4    that Broadcom's efforts and proposals to sell, license, or monetize the asserted patents are not

5    relevant.  *See* Dkt. No. 29 at 4-5; Dkt. No. 58 at 6-7.  For the same reasons, the Court concludes

6    that deposition testimony regarding this same subject matter also is not relevant.  Broadcom's

7    motion to quash with respect to this aspect of Topic No. 9 is granted.

8           Separately, based on discussion at the hearing, the Court orders Broadcom to investigate

9    whether one or more of the asserted patents has been expressly carved out of a license or

10   agreement involving a patent portfolio in which those patents would otherwise have been

11   included, or whether, instead of being carved out, such patents have been treated differently in the

12   license or agreement.  *See id.* at 37:21-39:8.  If such licenses or agreements exist, the Court

13   expects Broadcom to produce them and permit testimony about them as contemplated above for

14   the license agreements that Broadcom has already produced.

15          **H.      Topics Nos. 10, 11 and 12**

16          Each of these topics seeks testimony on the question of whether any of the asserted patents

17   is essential to a standard.  In Topic No. 10, BMW asks for testimony about "[i]nvestigations

18   regarding the standards-essential nature of the Asserted Patents, including any comparison of any

19   Broadcom product or technology, including, but not limited to, the BCM54ll, the BCM5201, and

20   the BCM5202, to the OpenGL ES Standard or the IEEE 802.3 Standard."  In Topic No. 11, BMW

21   asks for testimony about "[m]eetings, including working groups, contributions of members, and IP

22   declarations of the Khronos Group or the IEEE Ethernet Working Group or their members relating

23   to the Asserted Patents in connection to the OpenGL ES Standard after January 2003 or the IEEE

24   802.3 Standard after January 1998."  In Topic No. 12, BMW asks for testimony about "[t]he use

25   of Broadcom or Avago products or chipsets—including the BCM541l, the BCM5201, and the

26   BCM5202—that allegedly practice the Asserted Patents, the OpenGL ES Standard, or the IEEE

27   802.3 Standard."

28          BMW says that in the German proceeding involving EP '531, it has expressly asserted as a

defense that if that patent is construed as Broadcom proposes, the patent is essential to a standard or standards, and Broadcom abuses its dominant market position by not licensing the patent on fair, reasonable, and non-discriminatory terms.  Dkt. No. 67-2 ¶ 8.  In support of that defense, BMW argues that it should be permitted to question Broadcom about the assessments and representations, if any, it has made about whether EP '531 is standard-essential, and about any of Broadcom's own products that Broadcom contends practice that patent and a standard or standards.  Dkt. No. 67 at 16-17.  Broadcom asserts that it has not made any assessments or representations that EP '531 is standard-essential and that BMW's justification for these topics is speculative.  Dkt. No. 66 at 17-18.

Because BMW has shown that the question of whether EP '531 is standard-essential is at issue in the German proceeding, it has articulated a reasonable basis for the deposition testimony it seeks regarding that patent.  However, BMW has not made a similar showing as to the other asserted patents, and the Court agrees with Broadcom that testimony concerning the standard-essential nature of the other asserted patents is not warranted.  Accordingly, with respect to Topics Nos. 10-12, Broadcom's motion to quash is granted as to EP '181 and EP '052, but denied as to EP '531, to the extent BMW seeks testimony concerning whether the patent is standard-essential or whether a practicing product is standard-essential.

As BMW observes in its opposition to Broadcom's motion to quash, Topic No. 12 also encompasses testimony concerning which Broadcom products practice the asserted patents. Specifically, BMW argues that Broadcom's sale of chips that embody the inventions claimed in the asserted patents may anticipate those patents.  Dkt. No. 67 at 15-16.   Broadcom concedes such discovery may be relevant to the question of the validity of the asserted patents.  Dkt. No. 77 at 78:19-25.  Accordingly, with respect to the portion of Topic No. 12 that asks for testimony about "[t]he use of Broadcom or Avago products or chipsets—including the BCM541 l, the BCM5201, and the BCM5202—that allegedly practice the Asserted Patents," BMW may inquire as to all three asserted patents regarding the following matters:  (1) which products practice or practiced the asserted patent, and (2) the date of first sale of each such practicing product.  However, BMW may not use Topic No. 12 to explore Broadcom's document search and collection efforts.  Instead,

9

the Court orders the parties to confer regarding whether documents identifying the first sale (date and customer) of each practicing product are responsive to a BMW document request and, if so, whether such documents can be collected and produced by Broadcom without undue burden, notwithstanding that such documents may be located in files maintained by Broadcom's legal department.

## I.     Topic No. 13

In Topic No. 13, BMW asks for testimony about "[i]nfringement, validity, nullity, or standing positions or defenses put forth by any party in any lawsuit or proceeding involving the Asserted Patents," including eight specific matters.  During the hearing, BMW explained that it is only interested in positions taken by Broadcom (not other parties) so that BMW can anticipate whether Broadcom will assert a similar position or positions against BMW.  Dkt. No. 77 at 91:5–13, 92:6-20.  In addition, it appears that BMW's principal goal is to use this deposition topic to ask about alleged gaps in Broadcom's production of documents about these prior matters.  Dkt. No. 77 at 91:19-92:5.

It is neither feasible nor an appropriate use of deposition testimony to require a fact witness to be prepared to explain each of Broadcom's positions or defenses in eight or more prior disputes. Such discovery imposes an unreasonable burden on Broadcom's corporate designee and is only tangentially relevant to the matters before the German court.  It is equally inappropriate for BMW to use this deposition topic as a means to inquire about disputed gaps in Broadcom's document production, which is an issue that should be addressed between counsel.  Broadcom's motion to quash as to Topic No. 13 is granted.  The Court orders the parties to confer regarding alleged gaps in Broadcom's production of documents relating to these prior matters and to discuss whether any missing documents can be supplied by Broadcom without undue burden, notwithstanding that such documents may be located in files maintained by Broadcom's legal department.

## J.     Topic No. 14

In Topic No. 14, BMW asks for testimony about "[t]he conception and reduction to practice of the alleged inventions disclosed in the Asserted Patents."  Broadcom objects that such testimony is irrelevant, as Germany is a "first to file" jurisdiction, not a "first to invent"

10

1  jurisdiction, such that the date of invention is no earlier than the filing date of the patents.  Dkt.

2  No. 66 at 18.  BMW does not disagree but argues that conception and reduction to practice are

3  relevant to questions of proper inventorship and claim scope.  Dkt. No. 67 at 8-9.

4      The parties agree that the German proceedings currently involve no assertions that

5  Broadcom has made improper inventorship claims.  Dkt. No. 68 at 13; Dkt. No. 77 at 103:12-15.

6  BMW insists that the German court nevertheless would consider an inventor's conception of the

7  invention relevant extrinsic evidence of claim scope, although it identifies no particular question

8  of claim scope or interpretation at issue for which such testimony would be relevant.  Dkt. No. 77

9  at 108:9-109:16.  Again, it appears that BMW's principal goal is to obtain testimony regarding

10  Broadcom's collection and production of documents relating to the prosecution of the asserted

11  patents. Dkt. No. 67 at 8, 9 n.12; Dkt. No. 77 at 103:12-104:17.

12      Based on the record before the Court, including the declarations of each party's German

13  counsel, the German proceedings do not appear to involve any matter as to which an inventor's

14  conception or reduction to practice of the claimed invention is relevant.  Even if BMW could

15  demonstrate that testimony about an inventor's conception or reduction to practice for a particular

16  asserted patent is relevant to a question of claim interpretation or scope, BMW does not explain

17  how a deposition of a corporate representative of Broadcom (as opposed to the inventor himself or

18  herself) is an appropriate tool for obtaining discovery of such matters.  In any event, BMW may

19  not use this deposition topic as a means to inquire about whether Broadcom has produced all

20  relevant prosecution history materials, which is an issue that should be addressed between counsel.

21  Accordingly, Broadcom's motion to quash as to Topic No. 14 is granted.  The Court orders the

22  parties to confer regarding Broadcom's production of prosecution history materials and whether

23  any missing documents can be supplied by Broadcom without undue burden, notwithstanding that

24  such documents may be located in files maintained by Broadcom's legal department.

25      **K.      Topic No. 16**

26      In Topic No. 16, BMW asks for testimony about "[m]eetings, correspondence, or

27  communication between Broadcom's CEO Hock Tan and BMW's senior vice president Dr.

28  Christoph Grote."  Broadcom objects to this deposition topic on the ground that BMW's own

1  executive was a participant in the meetings and communications to which the topic refers and that

2  such meetings and communications have no bearing on any matter at issue in the German

3  proceedings.  Dkt. No. 66 at 15.  In its opposition to the motion to quash, BMW says that it wishes

4  to inquire about Mr. Tan's *preparations* for his meetings and communications with Dr. Grote, not

5  the meetings and communications themselves.  Dkt. No. 67 at 22-23.  BMW points out that the

6  Court previously concluded a related document request sought relevant information to the extent

7  the preparation materials included a discussion of infringement or validity of the asserted patents.

8  *See* Dkt. No. 32 at 4:26-5:1.  However, during the hearing, BMW conceded that the only reason it

9  wishes to take Broadcom's deposition on the topic of meetings and communications between Mr.

10  Tan and Dr. Grote is to explore Broadcom's collection and production of documents concerning

11  these meetings and communications and to investigate why more such documents do not appear

12  on Broadcom's privilege log.  Dkt. No. 77 at 112:7-113:8.

13        The Court grants Broadcom's motion to quash as to Topic No. 16.  On its face, this

14  deposition topic does not seek deposition testimony about Mr. Tan's preparations for his meetings

15  and communications with Dr. Grote and is not limited to infringement or validity of the asserted

16  patents.  For these reasons, the topic does not seek any testimony relevant to any matter at issue in

17  the German proceedings.  Moreover, it is not appropriate for BMW to use this deposition topic as

18  a means to investigate Broadcom's production of documents responsive to BMW's Request No.

19  14 or Broadcom's preparation of a privilege log.

20        **L.    Topic No. 17**

21        In Topic No. 17, BMW asks for testimony about "[t]he materials or information produced

22  in response to any discovery requests" in two matters in which Broadcom sought discovery

23  pursuant to 28 U.S.C. § 1782 "relating to Nvidia's chip RIVA TNT."  BMW says this discovery is

24  relevant to the validity and scope of the asserted patents because Nvidia's RIVA TNT chip is prior

25  art to those patents.  Dkt. No. 67 at 12-13.  Broadcom acknowledges that the materials it received

26  pursuant to its own § 1782 applications regarding Nvidia's RIVA TNT chip may be relevant and

27  states that it has already produced information responsive to BMW's corresponding document

28  request for these materials.  Dkt. No. 66 at 20.

It is not clear what information BMW hopes to obtain about the "materials or information" produced by a third party to Broadcom concerning the Nvidia prior art. BMW characterizes this topic as encompassing information about Broadcom's "awareness" of Nvidia's RIVA TNT and Broadcom's "response" to the materials about Nvidia's product that it received in discovery. Dkt. No. 67 at 13. But these matters are not fairly within the scope of Topic No. 17, which is limited to the "materials and information" Broadcom obtained through discovery about a prior art chip. To the extent BMW wishes to inquire about the contents of these third-party materials, it has not explained how a Broadcom fact witness will be able to supply any relevant information about materials that Broadcom did not prepare. Finally, to the extent BMW wishes to use this deposition topic to explore what other documents Broadcom may have about Nvidia's RIVA TNT (*see* Dkt. No. 77 at 114:15-115:3), this inquiry is both outside the scope of Topic No. 17 and not an appropriate use of a deposition. Broadcom's motion to quash is granted as to Topic No. 17.

### M.     Topic No. 18

In Topic No. 18, BMW asks for testimony about "Broadcom's or Avago's current ability to access information owned, stored, housed, possessed, or controlled by any other entity affiliated with or related to Broadcom or Avago, including, but not limited to Avago Technologies International Sales Pte. Ltd. (Singapore), and policies or procedures regarding Broadcom's or Avago's access to such information." BMW says that it wishes to confirm that Broadcom has produced documents responsive to BMW's document requests, regardless of which Broadcom entity maintains possession of the documents. Dkt. No. 67 at 23. Broadcom says that it has already informed BMW that it would not withhold information or documents from BMW based on which Broadcom entity controls those materials. Dkt. No. 66 at 21. BMW says it requires sworn testimony to that effect.

This dispute reflects a concerning lack of cooperation and trust between the parties' counsel. It is not the kind of dispute the Court should have to resolve. The Court orders counsel for Broadcom to make a clear and specific written representation to counsel for BMW regarding whether and to what extent there is any limitation on Broadcom's or Avago's current ability to access information owned, stored, housed, possessed, or controlled by any other entity affiliated

United States District Court
Northern District of California

13

with or related to Broadcom or Avago, with respect to information responsive to BMW's discovery requests. The written representation must be provided no later than **October 16, 2020**. Broadcom's motion to quash as to Topic No. 18 is granted.

### N.     Topic No. 19

In Topic No. 19, BMW asks for testimony about "[t]he factual basis for the infringement allegations of Broadcom Corp. and Avago Technologies International Sales Pte. Ltd. against BMW based on the Asserted Patents." The information BMW seeks is certainly relevant to Broadcom's infringement claims, but it has already obtained this information directly in the German proceedings. BMW acknowledges that the purpose of this deposition topic is to investigate whether Broadcom has additional facts that it has not yet disclosed, but may disclose, in the German proceedings. *See* Dkt. No. 77 at 55:10-57:2.

The Court questions whether it is appropriate to require a corporate representative to testify regarding the factual basis for a party's infringement contentions. *See McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286–87 (N.D. Cal. 1991) (discussing considerations weighing against proposed deposition of fact witness regarding infringement contentions), *overruled on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991); *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475 PJH MEJ, 2012 WL 1413368, at *3 (N.D. Cal. Apr. 23, 2012) (same). BMW has not adequately addressed this concern. Moreover, as the German court apparently has its own procedures for considering amendments to a party's infringement positions, the deposition of a corporate fact witness is not appropriate vehicle for BMW to obtain advance notice of amendments Broadcom may seek to make to its infringement contentions. Broadcom's motion to quash as to Topic No. 19 is granted.

### O.     Topic No. 20

In Topic No. 20, BMW asks for testimony about "[t]he systems and procedures Broadcom and Avago use or used to monitor their patent portfolios for standard-essentiality, including, but not limited to, investigating the standards for which a given patent is essential and investigating which patents are essential for a given standard since January 1998." BMW says that this testimony is relevant to its abuse of dominant market position defense. Dkt. No. 67 at 17. As

noted above, this defense concerns only EP '531, and BMW may take deposition testimony concerning this defense with respect to Topics No. 10-12 as to that patent. However, BMW provides no justification for requiring a Broadcom witness to testify about whether and how Broadcom monitored its patent portfolio with regard to the standard-essentiality of the patents over the course of a 22-year period. There is no legal requirement for Broadcom to engage in such monitoring, and whether it did or did not has no bearing on any claim or defense in the German proceedings. Broadcom's motion to quash as to Topic No. 20 is granted.

IV.    CONCLUSION

As discussed above, Broadcom's motion to quash is granted in whole or in part as to Topics Nos. 1-2 and 5-20, and denied in whole or in part as to Topics Nos. 2-4, 7-12 and 15. Where the Court has ordered the parties to confer, they shall do so promptly and must jointly report back to the Court on the status of their discussions on those specific points no later than **October 27, 2020**. The joint report is limited to five pages without attachments or other supporting submissions.

        **IT IS SO ORDERED.**

Dated: October 14, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California

15